WESTERN ELECTRIC *v.* REVIEW BOARD OF INDIANA
EMPLOYMENT SECURITY DIVISION

[No. 669A113. Filed October 28, 1970.]

*Patrick J. Smith, Russell J. Ryan, Jr., Smith, Morgan & Ryan,* of counsel, of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William S. McMaster,* Deputy Attorney General, *John C. Ruckelshaus, Rex P.*

*Killian, Ruckelshaus, Bobbitt & O'Connor,* of counsel, of Indianapolis, for appellees.

SULLIVAN, J.—This is an appeal from a decision of the Review Board of the Indiana Employment Security Division. The Review Board determined that Jesse L. Anderson, one of the appellees herein, was eligible for unemployment benefits under the Indiana Employment Security Act (hereinafter referred to as the Act). Acts 1947, ch. 208, as found in Ind. Anno. Stat. § 52-1525, *et seq.* (Burns' 1964 Repl.). Thereafter, Western Electric Company (hereinafter referred to as the employer) initiated this appeal.

Under the undisputed evidence, it was established that Anderson (hereinafter referred to as the employee) was originally employed on January 18, 1951. On April 16, 1962, the employer established a wage attachment policy, which, in substance, provides that upon receipt by the employer of a wage attachment against an employee's wages, a two year period commences in which a three day suspension without pay is imposed for a second wage attachment and termination for a third. The employer reserved the right not to terminate under certain circumstances.

On September 9, 1964, the employer advised the employee of an impending Federal tax levy against his wages for a 1963 delinquency and told him that a second wage attachment within a two year period from the date of the first wage attachment would result in a three day suspension without pay and that a third attachment within the two year period would result in discharge. On October 1, 1964, an Internal Revenue Service Notice of Levy for the delinquent 1963 taxes was received by the employer which constituted a levy upon all of the employee's wages until $507.17, tax and penalty was fully paid. On October 6, 1964, the employee was again informed of the employer's wage attachment policy. On July 29, 1965, the employer received a court order to answer interrogatories concerning the employee's wages issued in

connection with proceedings supplementary for satisfaction of a judgment wholly unrelated to the 1963 Federal tax delinquency. On August 5, 1965, the employee was again informed of the employer's wage attachment policy. On September 4, 1965, the employer received a final order in garnishment against the employee's wage which levied upon them to the extent of 10% of the excess over $15 per week until a judgment for $935.85, costs and interest, was fully paid. On September 18, 1965, the employee was suspended for three days without pay (September 21, 22 and 23, 1965) and again informed of the employer's wage attachment policy. On October 15, 1965, the employer advised the employee of an impending Federal tax levy against his wages for 1964 income taxes and told him that if such a levy was issued he would be dismissed.

On November 3, 1965, the employer informed the employee that it had received a letter from a bank stating that the employee was delinquent in his payment of an installment account. The employee was informed that dismissal would result if action was taken by the bank.

On December 15, 1965, an Internal Revenue Service Notice of Levy for the delinquent 1964 income taxes was received by the employer which constituted a levy upon all of the employee's wages until $258.64, tax and penalty, was fully paid.

On December 20, 1965, the employee was discharged pursuant to the provisions of the employer's wage attachment policy. Thereafter, the employee applied for benefits under the Indiana Employment Security Act, *supra*.

On February 8, 1966, an initial determination was made by a deputy of the Indiana Employment Security Division that the claimant was *ineligible* for unemployment compensation under the Act because he was discharged by the employer for misconduct in connection with his work.

On February 18, 1966, claimant appealed the deputy's

determination of ineligibility and a hearing was held by the appeals referee. On March 12, 1968, the appeals referee issued his decision setting aside the local deputy's determination.

On March 27, 1968, the employer filed its Request for an Appeal with the Review Board and after oral argument the Review Board entered its decision affirming the referee's determination that the claimant was entitled to unemployment benefits because the claimant's discharge was *not* for misconduct in connection with his work. Thereafter, the employer initiated this appeal.

The only issue before this court is whether the claimant was discharged for misconduct in connection with his work within the meaning of the Indiana Employment Security Act, *supra,* so as to make him ineligible for unemployment benefits.

In the case of *Chrysler Corp.* v. *Review Board of the Indiana Employment Security Division* (1962), 134 Ind. App. 1, 185 N. E. 2d 25, the employer also had a rule providing for discharge in the event three garnishment orders were served. Three garnishment orders had been served on the employer and the employee had been discharged for violation of the rule. This court there recognized that:

> " * * * [N]o hard and fast rule can be fixed defining in precise terms what constitutes such misconduct as to deny an employee the benefits of this Act and that each case must be determined upon the particular facts thereof. * * * " 134 Ind. App. 1, 8.

However, it was decided that:

> " * * * [T]he record evidence leads inescapably to the conclusion that the herein claimant became unemployed as a result of his own fault. Notwithstanding the liberal opportunities afforded him to arrange his financial obligations so as to avoid the service on his employer of judicial process in connection with proceedings supplemental against his wages, claimant consistently failed to honor his agreements for the periodic liquidation of his indebtedness. This

action on his part resulted in the continued service on his employer of the said judicial process, in definance of and violation of the stated rule upon which his continued employment was conditioned. Under these circumstances, a grant of unemployment benefits to the herein claimant would be not only in contravention of the announced purposes of the Act but would be also tantamount to a declaration against the right of an employer to establish and maintain fair and reasonable rules and regulations for the conduct of its business and the welfare of its employees. * * * " 134 Ind. App. 1, 8.

In the case at bar the Review Board did not feel that the element of positive volition in causing one's own unemployment was present as in the *Chrysler* case. The Review Board could find no evidence of a voluntary course of conduct by the claimant establishing a wanton or wilful disregard for the employer's interests, or that the claimant wilfully or deliberately intended to violate the employer's wage attachment policy. In its decision the Review Board stated:

"Inaction by the claimant is indicated but with no evidence showing the capacity or ability of the claimant to remedy his financial predicament, it would be speculation and conjecture for the Review Board to hold that his inaction was, in fact, a deliberate, wilful violation of the employer's wage attachment policy."

We disagree.

The purpose of the Employment Security Act, *supra,* as expressly stated in § 101 thereof is to provide for payment of benefits to persons unemployed through no fault of their own. Acts 1947, ch. 208, § 101, as found in Ind. Anno. Stat. § 52-1525 (Burns' 1964 Repl.). "Fault" within the meaning of § 101 is not necessarily something blameworthy, culpable, or worthy of censure. *Walter Bledsoe Coal Company* v. *Review Board of Indiana Employment Security Division* (1943), 221 Ind. 16, 46 N. E. 2d 477.

In this particular context, however, the factor determining eligibility for unemployment benefits is whether there was

any action which the employee reasonably could have taken to avoid the three garnishments. For example, in the *Chrysler* case the employee at one point avoided a garnishment order by entering into an informal payment agreement.

We recognize that there may be circumstances in which the employer has received three attachments against an employee's wages in violation of the employer's wage attachment policy and yet the employee himself be not at fault. Sudden and expensive family illness might bring about such circumstance. In such cases the employee would be eligible for unemployment benefits because his unemployment is involuntary or faultless. However, absent mitigating circumstances, an employee's violation of a reasonable wage attachment policy is his own fault and therefore constitutes misconduct in connection with his work so as to make him ineligible for unemployment benefits.

It would be unreasonable to require the employer to affirmatively show in every case the absence of mitigating factors or the capacity of the employee to remedy his financial predicament. The employee is in the best position to show the existence of such factors. Compare *Thomas Products Co., Inc.* v. *Review Board* (1969), 145 Ind. App. 425, 251 N. E. 2d 473. Therefore, we hold that when the employer has established violation by the employee of a reasonable wage attachment policy, a fact not here disputed such violation constitutes misconduct in connection with his work unless the employee comes forward with evidence or explanation in mitigation.

In the case at bar the employer established the fact of the employee's violation of the wage attachment policy and the employee failed to come forward with evidence or explanation in mitigation.

The award of the Review Board of the Indiana Employment Security Division is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Lowdermilk, C.J. and Carson, J., concur.

Lybrook, not participating.

NOTE.—Reported in 263 N. E. 2d 184.