FREDERICK E. WILLIAMS *v.* REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION AND JEFFBOAT, INC.

[No. 2-476A123. Filed September 1, 1977.]

*Patrick E. Chavis, III,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Frederick E. Williams (Williams), a former employee of Jeffboat, Inc. appeals from a decision of the Review Board of the Indiana Employment Security Division reversing a referee's grant of benefits under the Indiana Employment Security Act.[1] Williams claims that the finding of the Board is both contrary to law and unsupported by the evidence.

The pertinent facts are as follows:

On July 17, 1975, Williams requested but was denied a half-day off from work to attend to personal matters. The next day Williams asked to leave the plant but was refused permission. Shortly thereafter, he received a phone call from his wife asking him to come home to repair a water pipe which had "busted loose". Williams consulted the supervisor, told him of the situation and requested a pass from the plant to attend to the matter. The supervisor granted the pass but warned Williams that he would have to bring back "some sort of verification" or report to the office on Monday.

On Monday, Williams reported to the office and stated that he had managed to repair the damaged water pipe himself. The superintendent declared the excuse to be without sufficient verification and discharged Williams for violating "Company Rule

---

1. Ind. Acts 1947, ch. 208, I.C. 22-4-1-1 — 22-4-38-3 (Burns Code Ed. 1974). Section 22-4-15-1 (Supp. 1976) provides: ". . . an individual shall be ineligible for waiting period or benefit rights: For the week in which he has left work voluntarily without good cause or has been discharged for misconduct in connection with his work, and for all "weeks subsequent thereto until such individual-has thereafter earned" remuneration equal to not less than ten [10] times his weekly benefit amount in employment."

No. 6 of the Intolerable Offenses: Insubordination or refusal to carry out a direct order." The Review Board determined Williams ineligible for unemployment benefits on grounds that his discharge was with just cause.

Williams prosecuted his claim through proper administrative channels. On August 8, 1975, he was denied recovery by a claims deputy. On September 22, 1975, a referee reversed the deputy's decision after a hearing. Jeffboat appealed to the Review Board, which in turn reversed the referee's finding and issued the following:

"STATEMENT OF FACTS: The record in this case indicates that the claimant worked for this employer from April 1968, until July 18, 1975, as an overhead crane operator at an hourly rate of $5.27. According to the testimony, claimant had asked for time off on July 18, 1975, but was refused because he was needed at work. The record further shows that some time later on that date, claimant received a phone call asking him to come home because the 'water pipes' needed to be repaired. At this point, the claimant was informed that he must verify the reason for his leaving when he returned to work. When claimant failed to verify his reason for leaving, he was discharged after a hearing between his union and the employer on July 21, 1975."

"FINDINGS AND CONCLUSIONS: The Review Board finds that the claimant was discharged by the employer on July 21, 1975.

It further finds that claimant was discharged after failing to provide the employer with an acceptable verification of his absence on July 18, 1975.

It further finds that the claimant was told specifically by his superintendent on July 18, 1975,. that he must provide said excuse.

The Review Board concludes that since claimant admittedly failed to provide the excuse as required by the employer, his discharge must be considered as being for just cause in connection with work within the meaning of the Act."

Since our review of both the application of correct law and the sufficiency of the evidence in this instance requires basically the

same analysis, we will deal with both concurrently. The question presented for our determination is whether the evidence in the record supports the Review Board's conclusion that Williams was discharged for just cause, thus rendering him ineligible for benefits under I.C. 22-4-15-1.

Absence or tardiness from work without acceptable excuse may be a proper basis for dismissal of an employee. *See Industrial Laundry v. Review Bd. of Ind. Emp. Sec. Div.* (1970), 147 Ind. App. 40, 258 N.E.2d 160; *Thompson v. Hygrade Food Products Corp.* (1965), 137 Ind. App. 591, 210 N.E.2d 388. While such dismissals are usually for absenteeism of a chronic or habitual nature, single absences under appropriate circumstances have been held to constitute just cause for dismissal. *Burke v. Unemployment Compensation Board of Review* (1962), 199 Pa. Super. 565, 186 A.2d 425; *Johns v. S.H. Kress and Company* (1957), 78 Ida. 544, 307 P.2d 217; *Butchko v. Unemployment Compensation Board of Review* (1951), 168 Pa. Super. 618, 82 A.2d 282; *see generally* 41 A.L.R.2d 1158 (1955).

I.C. 22-4-15-1 provides:

" 'Discharge for just cause' as used in this section is defined to include but not be limited to . . . unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness; . . ."

The initial burden of proving misconduct consisting of absenteeism sufficient for dismissal with just cause rests with the employer. *A. Winer, Inc. v. Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 638, 95 N.E.2d 214. Jeffboat met this burden, at least prima facie, by introducing evidence showing that Williams was absent from work without acceptable excuse.

It then fell upon Williams to produce evidence showing good cause for the absence. Williams contends that his own account of what transpired at home should suffice in light of the fact that he managed to repair the pipe without need of assistance.

The pass to leave the plant, however, was expressly conditioned on the later production by Williams of verification for the

excuse.[2] Williams by leaving, at least impliedly, agreed to this condition.

It is fair to expect a reasonable person to understand, upon orders to produce verification of an excuse at a later date, that he assumes the risk of disciplinary consequences for failure to produce the verification even though circumstances arise which make verification difficult or impossible to obtain. To suggest otherwise would be to place an employer in the untenable position of having to accept all unsupported alibis in situations where verification is impractical.

In *Zielinski v. Unemployment Compensation Board of Review* (1953), 174 Pa. Super. 244, 101 A.2d 419, similar facts were involved. The employee was required under a union contract to submit a doctor's certificate verifying illness after five days of absence. The employee failed to submit the certificate, stating that, although she had been ill, she did not require medical attention. The Review Board's finding of "voluntary termination" of the employment was affirmed on the grounds that the employee had offered no evidence supporting her claim of illness.

This Court has previously noted that the mere assertion of an employee that his absence from work was for a good personal reason does not as a matter of law make the absence excusable. *See White v. Review Bd. of Ind. Emp. Sec. Div.* (1972), 151 Ind. App. 426, 280 N.E.2d 64.

In *White, supra,* we held that we would not, as a matter of law, determine whether an employee's absenteeism was or was not chronic or habitual. Similarly, we will not pass judgment upon the reasonableness of an absence or the plausibility of its justification. Such a determination is one of fact and is exclusively within the discretion of the Review Board. I.C. 22-4-17-12 (Burns Code Ed. 1974). Such findings will not be disturbed unless reasonable men would be bound to reach a contrary conclusion. *Achenbach v.*

2. In common usage, the word "verify" means ". . . to prove to be true, to establish the truth of; to confirm, as by comparison with facts . . .; to confirm the truth or truthfulness of; to check or test the accuracy or exactness of; to confirm or establish the authenticity of as by examination of competent evidence." Webster's International Dictionary (2nd Ed.).

*Review Bd. of Ind. Emp. Sec. Div.* (1962), 242 Ind. 655, 179 N.E.2d 873; *Skirvin v. Rev. Bd. of Ind. Emp. Sec. Div.* (1976), 171 Ind. App. 139, 355 N.E.2d 425.

We further stated in *White, supra*:

"Most every wage-earner, at various periods in his productive life, faces family emergencies and matters of urgent personal nature. Such absences may if reasonable and not habitual be excused. *We cannot, in this instance, however, impose a mandatory label of reasonableness upon Mr. White's absences.*" (Emphasis supplied) 280 N.E.2d at 67.

The motive or state of mind of Williams is not in question here. Moral blameworthiness or culpability is not necessary. *Western Electric Co. v. Review Board* (1970), 147 Ind. App. 645, 263 N.E.2d 184. It is enough that the employee fail to produce sufficient evidence showing good cause of the absence.

Jeffboat established that Williams was absent without proper verification of his excuse. Williams countered only with an unsupported claim that his absence was for good personal reason and that he required no assistance from which verification could be derived.

Reasonable minds could find that Williams evidenced intentional and substantial disregard of his duties and obligations to Jeffboat. *A. Winer, Inc. v. Review Bd., Emp. Sec. Div., supra.*

Accordingly the decision of the Review Board is affirmed.

Robertson, C.J., (participating by designation) and

Buchanan, J., concur.

NOTE—Reported at 366 N.E.2d 712.