WHIRLPOOL CORPORATION, Appellant (Defendant Below),

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, as Members of and Constituting the Review Board of the Indiana Employment Security Division, and Rosemary P. Pold, Appellees (Plaintiffs Below).

No. 2-781A238.

Court of·Appeals of Indiana, Second District.

Aug. 4, 1982.

Arthur D. Rutkowski, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellees.

SULLIVAN, Judge.

Whirlpool Corporation (Whirlpool) appeals from a decision of the Review Board of the Indiana Employment Security Division adopting a referee's grant of benefits to Rosemary Pold (Pold) under the Indiana Employment Security Act.[1]

The following issues are presented for review:

I. Whether Whirlpool was denied procedural due process by the Review Board's failure to notify Whirlpool of the denial of Whirlpool's request for a hearing before the Review Board rendered its decision.

II. Whether the doctrine of collateral estoppel precludes the Review Board from finding that Pold was discharged for other than just cause.

III. Whether the Review Board's decision is both contrary to law and unsupported by the evidence.

## FACTS

After an evidentiary hearing, a referee entered the following findings of fact and conclusions of law:

"The record shows that the claimant was employed by the employer herein for approximately 2½ years prior to June 10, 1980, her last day worked. The employer representatives testified that, prior to the date of the claimant's discharge, she had been disciplined because of her attendance record. In November of 1979, the claimant was terminated from her employment because of attendance problems, but she was reinstated in her job later in that month, with the express understanding that all future absences would have to be documented. Thereafter, on June 9, 1980, the claimant telephoned the employer to state that she was suffering with an ear ache, and that she would not be at work that day. When the claimant reported for work on the morning of June 10, 1980, she had no documents to substantiate the reasons for her absence on June 9, 1980, and she was then discharged from her employment. The employer representatives were unable to state the number of absences which the claimant had had from November of 1979 through the date of her discharge.

"The claimant, on the other hand, testified that, from November of 1979 until June 9, 1980, there were only two occasions when she missed any work. One of those occasions was in February of 1980, when the claimant was allowed to leave her job by her supervisior [sic] in order to take care of some business at the high school where her son was a student. The only other incident of poor attendance between November of 1979 and June 9, 1980, occurred just a few days prior to the claimant's termination. On that occasion, the claimant's ride failed to pick her up for work, and the claimant immediately called her foreman to state that she would be late because of her lack of transportation. The claimant testified that she was suffering with an ear infection on June 9, 1980, and she properly notified the employer that she was unable to report for work on that day because of

1. Ind.Code §§ 22-4-1-1 *et seq.* (West Ann. Code 1981)

that infection. The claimant stated that she did not see a physician on June 9, 1980, since she had had ear infections before, and she still had some medication for that medical problem. The claimant also stated that her doctor was unavailable on June 9, 1980, and the only medical attention she could have received on that date was in an emergency room, and she did not feel like waiting an extended period of time in order to receive treatment in a local emergency room. The claimant immediately informed her foreman, when she reported for work on June 10, 1980, of the reason for her absence the day before. The claimant stated that her foreman then informed her that, even if she had brought a statement with her on June 10, 1980, it would not have done any good, since he would have discharged her anyway.

"From the evidence submitted, the referee finds that in November of 1979, this employer discharged the claimant from her employment because of her attendance record. The referee further finds that, later in November of 1979, this employer reinstated the claimant in her job with the understanding that she would have to document any future absences. The referee further finds that, from November of 1979 until June 9, 1980, the claimant missed a portion of only two days at work, and she kept the employer notified of her reasons for being absent from work on those occasions. The referee further finds that, on June 9, 1980, the claimant was suffering with an ear infection. The referee further finds that the claimant had had ear infections before, and she still had some medication for that medical problem. The referee further finds that, since the claimant's personal physician was unavailable, and since she did not feel like waiting an extended period of time in a local emergency room, she did not consult a physician for that ear infection on June 9, 1980. The referee further finds, however, that the claimant did inform the employer, on June 9, 1980, that she would not be at work because of that medical problem. The ref-

eree further finds that, when the claimant reported for work on the morning of June 10, 1980, she had no medical document to show the reason for her absence on June 9, 1980, but her foreman informed her that, even if she had a medical statement, it would have made no difference. The referee further finds that the claimant was discharged from her employment on June 10, 1980 because she did not have a medical document in her possession on that date to show the reason for her absence on June 9, 1980. The referee further finds that there was no evidence introduced at the hearing to show that the employer would have given the claimant some additional time to acquire a medical statement. The referee further finds that the evidence of record, taken as a whole, fails to establish that the claimant acted in willful or wanton disregard for the employer's best interests. The referee concludes, therefore, that the claimant was discharged from her employment, but not for just cause."

The Review Board adopted the referee's finding and conclusions in toto.

## I. DUE PROCESS

Whirlpool contends that certain regulations of the Review Board required the Board to notify it that no hearing would be conducted on the employer's request for an appeal to the Review Board. Whirlpool asserts that the Review Board's failure to follow the dictates of these regulations denied it procedural due process.

The regulations upon which Whirlpool relies provide in part:

"The Review Board may grant or deny such a request for the hearing and shall immediately notify the parties in writing." 640 IAC 1–11–7 (1979 Ed.)

"Notice of all hearings or proceedings before a referee or a review board, unless otherwise directed by statute, shall be given by mail .... Unless otherwise provided at least five (5) days' notice of all hearings shall be given from the date of mailing the notice thereof." 640 IAC 1–11–16 (1979 Ed.)

■ Neither the above-quoted regulations nor the cases cited by Whirlpool require the Review Board to notify the parties that a hearing will not be conducted before the decision of the Review Board is issued. Due process requires notice and an opportunity to be heard before a burden can be imposed upon a person or his property. *Fries v. Brier* (1886), 111 Ind. 65, 11 N.E. 958, 959. Whirlpool had an opportunity to be heard before the referee, and was in fact heard at that stage. Additionally, the procedure used by the Review Board in this case was not illegal. As stated in *Alcoa v. Review Bd. of Ind. Employment Sec. Div.* (3d Dist. 1981), Ind.App., 426 N.E.2d 54, 57:

"640 IAC 1–11–7 does not require the Review Board to decide whether to grant a hearing, notify the parties, wait a period of time, and then issue a decision; the Review Board may decide to deny a party a hearing and immediately make a decision based solely upon the record before the referee. Alcoa has failed to detail what actions it could have taken to protect itself. Furthermore, no authority is cited as to what further actions could have been taken to challenge the Review Board's denial ...."

*Accord Ryba v. Review Bd. of Ind. Employment Sec. Div.* (3d Dist. 1982), Ind.App., 435 N.E.2d 78.

■ Similarly, 640 IAC 1–11–16 does not require the Review Board to give notice that a hearing will not be held. All that is required is that notice be given when a hearing is held. Nor can the Review Board's decision to affirm be denominated a "proceeding" of which the parties must be given notice before it is disseminated.

In *Alcoa* this court was unable to find in the statutes or regulations any rights for further action by the employer other than an appeal upon the Review Board's denial of a hearing and rendition of its decision. Nor did the employer argue that there was any action it would have taken. Whirlpool argues that, if it had been advised of the denial of the hearing, it would have attempted to submit an application for leave to introduce additional evidence to the Review Board. 640 IAC 1–11–8 (1979 Ed.) does allow for consideration by the Review Board of additional evidence, either upon its own motion, or upon written application of either party. The regulation further provides: "Such application, if made by the appellant, must be presented at the time the request for hearing is filed." *Id.*

Whirlpool concedes that any such application it would have filed would have been late, (Appellant's Brief at 16) for it did not submit one with its request for a hearing. Nor did Whirlpool at any time between the date of its appeal to the Review Board (September 8, 1980) and the decision of the Review Board (June 5, 1981) attempt to submit such an application even though the additional evidence it contends it would have introduced was available April 3, 1981.

■ We fail to see how Whirlpool was prejudiced by the lack of notice of the denial of the hearing prior to the Review Board's decision. Even if the application to submit the additional evidence had been timely, the decision whether to consider it rested within the sound discretion of the Review Board.

Finally, Whirlpool states that, in the past, when a grievance had been filed and was pending regarding just cause for dismissal, the Chairman of the Review Board had contacted the employer's labor relations administrator to learn the outcome of arbitration. Whirlpool argues that it relied upon the same *ex parte* contact in this instance.

Without passing upon the propriety of this "procedure", we fail to see how Whirlpool was prejudiced by the failure of the Review Board to contact it. We find nothing in the statute or regulations which requires the Review Board to inquire into the status of a grievance under a collective bargaining agreement. Of course, the Review Board, pursuant to 640 IAC 1–11–8, may, upon its own motion, consider additional evidence, but this grant is within the sound discretion of the Review Board.

## II. COLLATERAL ESTOPPEL

Whirlpool argues that the doctrine of collateral estoppel precluded the Review Board

from finding that the claimant was discharged for other than just cause because of the finding in the decision of the arbitration board that the claimant was discharged for just cause.

■ The doctrine of collateral estoppel precludes the re-litigation of identical issues in different suits. Through collateral estoppel a final judgment is given force to identical issues in subsequent litigation. *See* Note, *Nonmutuality: Taking the Fairness Out of Collateral Estoppel*, 13 Ind.L. Rev. 563, 570–71 (1980).

In the instant case, the decision of the arbitration board was never properly presented to the referee or to the Review Board. Therefore, we need not decide whether an arbitration decision that an employee was discharged for just cause within the meaning of the collective bargaining agreement between the union and the employer would preclude the Review Board's determination whether a claimant was terminated for just cause within the meaning of I.C. § 22–4–15–1.

### III. ERROR OF LAW

Whirlpool contends that the Review Board's decision is both contrary to law and unsupported by the evidence.

When the award of unemployment compensation is challenged as contrary to law, we apply a two-tier standard of review under I.C. § 22–4–17–12. The two-tier standard was stated in *Graham v. Review Board of Ind. Employment Sec. Div.* (3d Dist. 1979), Ind.App., 386 N.E.2d 699, 701–02:

"Under this two-tier standard of review, the Review Board's 'finding of ultimate fact' is the conclusion, and the 'findings of basic facts' are the premises from which the Review Board deduced its conclusion.

'At the first level of review, we examine only the relationship between the premises and the conclusion and ask if the Board's deduction is "reasonable". (Citations omitted.) The inquiry at this first level of review may be termed a "question of law". (Citations omitted.)

'At the second level of review, we inquire into the nexus between the premises or findings of basic facts and the evidence presented to determine if the evidence justified those findings.' *Gold Bond Bldg. Prod. Div., etc. v. Review Bd., Ind.* (1976), [169] Ind.App. [478], 349 N.E.2d 258, at 263.'

"With regard to the first level of review, it is necessary to determine whether the findings of fact were sufficient in law to support the ultimate finding that [the claimant] was discharged for just cause." (brackets and omissions in original).

■ In addition, in ascertaining whether the Review Board's decision is contrary to law, we must determine whether the decision is reasonable in light of the Review Board's findings. *Batts v. Review Board of Ind. Employment Sec. Div.*, Ind.App. (2d Dist. 1979), 385 N.E.2d 1174.

After reviewing the Review Board's findings of fact, we are unable to conclude that the findings sustain the conclusion that Pold was discharged from her employment for other than just cause. The Review Board's findings of fact reveal the following facts relevant to Pold's claim for unemployment compensation:

(1.) Pold had been disciplined for her attendance record prior to her discharge.

(2.) Pold was terminated in November, 1979 because of her attendance problems, but was reinstated upon the express understanding that all future absences had to be documented.

(3.) Pold was absent on June 9, 1980, and, upon reporting to work the next day, had no document to substantiate the reason for her absence.

(4.) Pold could have obtained medical attention for her illness on June 9, 1980, by going to the emergency room of the local hospital, but did not wish to wait at the emergency room.

However, the Board appeared to ignore the "express understanding" of the parties and found that:

(1.) Pold was absent only twice between November, 1979 and June 9, 1980, and was excused both times by her supervisor.

(2.) Pold "properly notified" Whirlpool on June 9, 1980, that she was unable to work because of an ear infection.

(3.) Pold had had ear infections before and still had medicine for the infection.

(4.) Pold's regular doctor was unavailable on June 9, 1980.

(5.) When Pold reported to work on June 10, 1980, she immediately informed her foreman of the reason for her absence.

(6.) Pold's foreman informed her that even if she had had a medical statement, he would have discharged her anyway.

(7.) Pold was discharged because she did not have documentation for her absence on that date, and there was no evidence to show that the employer would have given Pold additional time to acquire medical documentation.

From these facts, the Review Board concluded that Pold was discharged from her employment, but not for just cause.

I.C. 22–4–15–1(e) provides in part:

" 'Discharge for just cause' as used in this section is defined to include but not be limited to:

\* \* \* \* \* \*

(3) Unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

\* \* \* \* \* \*

(5) Refusing to obey instructions;

\* \* \* \* \* \*

(8) ... [O]r for any breach of duty in connection with work which is reasonably owed an employer by an employee."

Our courts have held that misconduct adequate to justify discharging an employee includes an employee's failure to verify his excuse for being absent from work as required by the employer. *Molina v. Review Board of Ind. Employment Sec. Div.*, (4th Dist. 1981), Ind.App., 418 N.E.2d 1198, 1200; *Williams v. Review Board of Ind. Employment Sec. Div.* (2d Dist. 1977), Ind.App., 366 N.E.2d 712; *Thompson v. Hygrade Food Products Corp.* (1st Dist. 1965), 137 Ind.App. 591, 210 N.E.2d 388.

■ The burden of proving just cause for discharge rested initially upon the employer. *Williams, supra.* Whirlpool met this burden, at least prima facie, by introducing evidence that Pold was absent from work without prior authorization of her supervisor and that, upon reporting to work, she failed to produce documentation in accordance with her employer's instructions.

■ When Pold breached the "express understanding," or Memorandum of Understanding as Whirlpool termed it, she breached a duty in connection with work which was reasonably owed her employer because of her past deficiencies. We have held that a single absence, under proper circumstances, may be considered just cause for discharge. *Williams, supra.* Nevertheless, although an employer may require verification of absence, it must give the employee a reasonable time to obtain such documentation. The "rule of reason" must be applied to any such requirement. Otherwise, an employee may be encouraged to absent herself for a longer period than necessary in order to obtain documentation when it is impossible immediately to obtain it. If an employee returns to work without required documentation, however, the employer may provide for immediate termination, subject to reinstatement should the employee provide the requisite verification of the reason for absence.

■ Upon Whirlpool's prima facie showing that discharge was for just cause, the burden of going forward passed to Pold to produce verification for her absence in accordance with the Memorandum of Understanding. This she was required to do at least by the time of the hearing before the referee. As noted in *Williams, supra,* at 715:

"It is fair to expect a reasonable person to understand, upon orders to produce verification of an excuse at a later date, that he assumes the risk of disciplinary consequences for failure to produce the verification even though circumstances arise which make verification difficult or impossible to obtain. To suggest otherwise would be to place an employer in the untenable position of having to accept all unsupported alibis in situations where verification is impractical."

Pold failed to bear the reasonable responsibilities imposed upon her. Her discharge was therefore for just cause as a matter of law. The Review Board erred in ignoring the clear dictates of the Memorandum of Understanding, for Pold's breach of the memorandum constituted a breach of duty in connection with work which Pold reasonably owed Whirlpool. *See*, I.C. § 22–4–15–1(e)(8).

The award of the Review Board of the Indiana Employment Security Division is reversed.

BUCHANAN, C. J., and SHIELDS, J., concur.