307 P.2d 217

In the Matter of the Claim of Lois L. JOHNS, for Unemployment Insurance Benefits, Claimant-Respondent,

v.

S. H. KRESS & COMPANY, Appellant.

No. 8462.

Supreme Court of Idaho.

Feb. 8, 1957.

Richard, Haga & Eberle, Boise, for appellant, S. H. Kress & Co.

Carver, McClenahan & Greenfield, Boise, for claimant-respondent, Lois Johns.

Graydon W. Smith, Atty. Gen., John W. Gunn, Asst. Atty. Gen., for Employment Security Agency.

KEETON, Chief Justice.

This proceeding is here to review an order of the Industrial Accident Board allowing claimant (respondent) unemployment compensation under the Employment Security Law, Sec. 72–1301 et seq., I.C. The proceeding was initiated before the Employment Security Agency, which denied the claim. Claimant appealed to the Appeals Examiner, who, after a hearing, affirmed the decision of the Employment Security Agency. On appeal to the Industrial Accident Board, it reversed the determination made by the Appeals Examiner.

The material facts are not in dispute. Claimant had been employed by S. H. Kress & Company from August, 1954, until she was discharged December 26, 1955. In 1955 Christmas fell on Sunday. December 26th was by gubernatorial proc-

lamation designated a holiday. In her claim for unemployment benefits claimant stated: "I was discharged for refusing to work on Monday, December 26, 1955, a legal holiday".

On December 21st or 22nd the store manager. Mr Osborne, called a meeting of the employees at which claimant was present, and stated in substance that all employees would be required to work on December 26th, the day after Christmas. This was in accordance with the policy of the company extending over a period of at least fifteen years. Employees over a period of years had worked on that day and claimant had worked on Sunday, December 26, 1954. All employees reported for work as requested except those who were excused by Mr. Osborne and claimant who was not excused. Employees working that day were paid double time, and additionally, an hour extra.

The necessity for working the Monday in question was explained to the employees at the meeting, that is, that the inventory had to be in by December 31st, shelves had to be cleared, and seasonal stock put away.

Claimant did not approach Mr. Osborne, manager, and ask to be excused from work, or indicate to him that she would not be present and work. Following the meeting above referred to, claimant testified:

"Q. Following this meeting did you discuss this matter with the floor lady?

A. Yes, I told Mrs. Waddell I wasn't going to be there.

"Q. Was she your supervisor? A. Yes."

She also testified:

"I told several of the girls that I wasn't going to show up and they said 'Well, you'll get fired anyway,' I told them that I guessed if I could I would just have to draw my unemployment compensation until I could find something else."

One excuse given by claimant for not working December 26th was that she had invited her grandmother to dinner and had to stay home and cook dinner for her. Mr. Osborne testified, and the testimony is affirmed by claimant:

"Q. Did the claimant report to work after that time? [December 26, 1955] A. She called me at the store and I learned she'd gone by my home. * * * So she phoned me at the store asking if she was to report for work the next day. I advised her that she wasn't * * * I told her that we weren't going to need her any longer.

"Q. You told her briefly why? A. I asked her why she hadn't reported for work that day and she said she didn't believe in working on holidays.

*     *     *     *     *     *

"A. * * * she said that nobody else worked that day. And I named off a few of the stores around town that

were working and she said 'Well, Mrs. Johns didn't work.' I said, 'Yes, but Mrs. Johns doesn't have a job any longer.' "

The Board defined the issue as follows: "Whether refusing to work on a legal holiday constitutes misconduct on the part of the employee" and ruled:

"When a contract of hiring does not expressly require work on a legal holiday, the refusal of an employee to work on such a holiday is not 'misconduct in connection with his employment,' within the meaning of that term as used in Section 72–1366(f), Idaho Code Supplement."

No authority to sustain this conclusion made by the Board is cited.

In enacting the Employment Security Law, Sec. 72–1301 et seq., I.C., the public policy and reason for its enactment is set forth in Sec. 72–1302, I.C. which requires the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

Sec. 72–1366, I.C. as last amended, 1955 S.L. Ch. 18, Sec. 9, page 33, enumerates numerous personal eligibility conditions for unemployment benefits, and subdivision (f) provides:

"His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment * * *"

It thusly appears that one discharged for misconduct in connection with his employment is not entitled to the benefits of the Act.

■ The Act is social legislation, designed to alleviate economic insecurity and to relieve hardships resulting from involuntary unemployment; to encourage employers to provide more stable employment. The Act does not cover those who are unemployed resulting from their own fault. The Act was clearly intended to provide benefits for those unemployed under prescribed conditions who are able and willing to work, but unable to secure suitable employment on the labor market.

■ Where one has suitable employment and refuses to work under reasonable regulations and conditions, and pursuant to reasonable directives of management, such person is not within the terms of the Act, allowing benefits.

A directive of the management to work the day after Christmas, which fell on a Monday, even though it was by gubernatorial proclamation declared a holiday was neither arbitrary nor unreasonable, and was in accord with the proof and with well-recognized business practice in the community. The necessity for working on that

day was shown to exist and was pursuant to a long-established policy with which the claimant was familiar. Her excuse for not appearing for work, that she did not believe in working on holidays, or that she wanted to stay home and cook dinner for her grandmother, was in effect a positive, arbitrary refusal to comply with the terms of the contract of employment.

While the term "discharged for misconduct" as used in Sec. 72–1366(f), I.C. has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees.

The discharge of an employee for intentional, wilful misconduct deprives him of the right to unemployment compensation.

In the situation before us, claimant was advised by her fellow employees that if she refused to work she would be discharged, and she stated in substance that at any rate she would be entitled to unemployment benefits.

Upholding such a claim as is here made would not serve the purpose for which the Fund is created.

The order of the Industrial Accident Board is reversed with instructions to affirm the determination made by the Appeals Examiner.

TAYLOR and SMITH, JJ., concur.

McQUADE, Justice, with whom PORTER, Justice, concurs (dissenting).

This is a case of first impression, there being no cases cited upon which to base a conclusion.

This matter arose upon a claim for unemployment compensation based upon the following facts: The said claimant and respondent had been employed by the S. H. Kress Company, Boise, Idaho, for a period of 16 months prior to the twenty-first or twenty-second day of December, 1955. On this approximate date the manager of the company, Mr. Osborne, held a meeting of all employees, and at that meeting Mr. Osborne stated he wanted all employees to work on December 26, the Monday after Christmas. There was some testimony about the fact that Mrs. Johns told another employee she didn't intend to work the twenty-sixth of December, 1955.

There is also testimony in the record about a Mrs. Walters who requested time off on that particular day, and Mr. Osborne refused to let Mrs. Walters off. Mrs. Johns stated in the testimony that she heard the request of Mrs. Walters and felt that her request to be absent on the day of the twenty-sixth of December, 1955,

would not have been granted. Thereafter Mrs. Johns failed to show up for work on the twenty-sixth of December, stating as her reason that she had her grandmother from Gooding who was going to come for Christmas dinner on that day, her grandmother having been invited on Thanksgiving day of that year.

December 26, 1955, had been proclaimed a legal holiday by the governor of the State of Idaho. The proclamation reads as follows:

> "Executive Department
> "State of Idaho
> "Boise
> "Proclamation

> "Whereas, Christmas Day, December 25, 1955, and New Year's Day, January 1, 1956, occur on Sundays,

> "Now, therefore, I, Robert E. Smylie, Governor of the State of Idaho, by the power in me vested do hereby declare Monday, December 26, 1955, and Monday, January 2, 1956, as legal holidays in the state of Idaho. * * *"

As an added inducement for employees to work on this particular day, they were paid double time plus an additional hour off for lunch. It was stated by Mr. Osborne that it had been the practice for 15 years in this locality in that store to work the day following Christmas, and that many other stores in the area of Boise, Idaho, worked their employees on the same day, all for the purpose of clearing up and putting away the Christmas merchandise and preparing the store for the normal course of business and inventory. The contract of employment does not appear in the record. The only basis upon which the appellant relies is the reputed custom, which is discussed later in this dissent.

The Employment Security Agency denied the claim, on the ground and for the reason that Mrs. Johns voluntarily left her employment for domestic reasons, and in accordance with the statutory provisions as follows, and was not entitled to compensation.

Idaho Code, § 72–1366:

> "Personal eligibility conditions.— The personal eligibility conditions of a benefit claimant are that—
>
> * * * * * *
>
> "(c) With respect to a female claimant, her unemployment is not due to having voluntarily left work to marry, or to perform the customary duties of a housewife, or to leave the locale to live with her husband. The ineligibility of such person shall continue until she has demonstrated her desire to work and availability for work. The provisions of this subsection shall not apply after a change in conditions whereby she has become

the main support of herself or her immediate family.

\*    \*    \*    \*    \*    \*

"(f) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment; provided, that if a person becomes ineligible for benefits by application of this subsection his ineligibility shall continue until he has demonstrated his desire to work and availability for work by—

"(1) having obtained bona fide work and been paid wages therefor for a period of not less than thirty days. \*   \*   \*"

This ruling was appealed to the Industrial Accident Board and reversed. The Industrial Accident Board took the view that December 26 was a legal holiday, and Mrs. Johns was not required to work on that particular day, and her failure to appear that day was not voluntarily leaving her employment, nor was it misconduct. Rather, Mrs. Johns was discharged without legal reason by the employer.

The mere statement by Mr. Osborne that all employees were to work December 26 did not in and of itself constitute a contractual relationship with Mrs. Johns. Mr. Osborne, at the meeting of all employees, directed them to appear for work on the twenty-sixth day of December, 1955. Mrs. Johns was not obligated by the terms of her employment to work on a legal holiday. The nature of her employment and the nature of the type of business of S. H. Kress and Company was not such as required employees to work seven days per week, 30 days per month, but rather it is the usual type of business conducted in most communities, having due regard for Sundays and holidays. The record fails to show that any similar businesses were open to the public on December 26. It appears from the record that the prior manager for S. H. Kress and Company, Mr. Parsons, had not made such a hard and fast rule as did Mr. Osborne. Under Mr. Parsons, those employees who did not appear for work on such a day had not been discharged from their employment. Therefore, this is the first time such a rule was made, and was not the custom for the store.

It further appears from the record this is the only complaint the manager of S. H. Kress and Company had against Mrs. Johns, and it appears contrary to the meaning of the "liberal construction" of the Unemployment Compensation Act [1] that a person should be placed in the category of voluntary unemployment as provided by the Act because of one particular offense which the employer might complain of. However, the writer does not concede that

1.   Hagadone v. Kirkpatrick, 66 Idaho 55, 154 P.2d 181.

the employer had any right to claim that Mrs. Johns committed any offense. She was entitled to the day off as a legal holiday set aside by the governor, the authority being Idaho Code, § 73–108:

"Holidays enumerated.—Holidays, within the meaning of these compiled laws, are:

\*    \*    \*    \*    \*    \*

"Every day appointed by the President of the United States, or by the governor of this State, for a public fast, thanksgiving, or holiday."

As Webster says, a holiday is:

"A religious festival; a day set apart for commemorating some important event in history; a day of exemption from labor."

I.C. § 73–110 provides:

"Computation of time—Obligations maturing on holidays.—Whenever any act of a secular nature, other than a work of necessity or mercy, is appointed by law or contract to be performed upon a particular day, which day falls upon a holiday, such act may be performed upon the next business day, with the same effect as if it had been performed upon the day appointed."

It appears the purpose of a legal holiday is to suspend work. Only by offering the inducement of double pay and an extra hour off for lunch had the prior store managers secured the services of employees on Sundays and holidays. This would then be voluntary labor for duties in addition to regular working days. Mr. Osborne, in his attempt to force Mrs. Johns to work on that day, the twenty-sixth day of December, 1955, was operating contrary to public policy and the public welfare.

The action of the Industrial Accident Board conforms to the intent and purposes of the Employment Security Law as set forth in I.C. § 72–1302:

"Declaration of state public policy. —(a) As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of national and state interest and concern which requires appropriate action to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. Ths can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of un-

employment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the benefits of persons unemployed through no fault of their own.

"(b) This law is enacted for the purpose of securing for this state the maximum benefits of the Act of Congress, approved August 14, 1935, known as the 'Social Security Act,' as amended, and to enable the workmen of Idaho to benefit from the provisions of said act."

It may be clearly seen that this Act is not intended for a period of national emergency, but is designed for each individual family and member thereof. The purpose is to prevent a family or series of families from suffering because of involuntary unemployment. The Act in effect, in this declaration of policy, respects and honors all those who must expend their labor to secure a livelihood, and that the economy of the country is affected either favorably or adversely according to the labors of its people.

It is to be thoughtfully considered that this employee did not voluntarily leave her work to perform the customary duties of a housewife, nor was she guilty of any misconduct, but rather was exercising a statutory right given to her to suspend labor for that day because it had been designated a holiday by the governor of the State of Idaho.

The discussion of the facts with other employees had nothing to do with rights of Mrs. Johns. She was either entitled to the holiday or not. In the absence of a positive showing by the employer as to either an express or implied contract of employment requiring employees to work on legal holidays, the claimant is entitled to compensation.

The award should be affirmed.