554 P.2d 1357 (1976)
Margaret E. CASIAS, personal representative of the Estate of Richard A. Casias, Deceased (by substitution), Petitioner,
v.
The INDUSTRIAL COMMISSION of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado) and Time, D.C., Inc., Respondents.
No. 75-291.
Colorado Court of Appeals, Div. I.
September 23, 1976.
Steven L. Zimmerman, Denver, for petitioner.
*1358 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Louis L. Kelley, Asst. Atty. Gen., Denver, for respondents, The Industrial Commission of the State of Colorado.
Selected for Official Publication.
COYTE, Judge.
Margaret E. Casias, by substitution for claimant, Richard A. Casias, appeals from a denial of unemployment compensation benefits based on the determination of the Industrial Commission that claimant was properly discharged for falsification of his employment application. We set aside the order and remand for further findings.
In May 1974, claimant filed an employment application with Time, D.C., Inc. (employer). Following a physical examination in which he was found to be in good health, claimant began work on June 2, 1974, as a dockman and checker. At that time, claimant had an epileptic condition caused by certain head injuries sustained several years previously, but with the aid of medication he was, and had been, free from seizures for several years.
On July 31, 1974, an accident occurred at the loading dock and claimant was taken to the hospital. During claimant's stay in the hospital, employer's physician learned of claimant's condition and need for medication and notified the employer of this fact. On Monday, August 5, 1974, claimant was issued a release to return to work. He appeared for work on the Monday graveyard shift but was told not to work that night and to return the following morning to discuss his employment. Claimant, accompanied by a representative of the Colorado Epilepsy Association, attended a meeting with company representatives on Tuesday morning, and received his oral discharge. On August 8, a letter of termination was sent.
The basis for the discharge was falsification of facts on claimant's employment application, and misrepresentations made to the company doctor who performed the pre-employment physical examination. On the application, claimant had answered the following questions in the negative:
"Have you ever had or do you now have epileptic attacks, dizziness or fainting spells?
"Have you ever had a head injury?"
In addition, the physician, in order to complete a medical questionnaire, had been told by claimant that claimant had had no head or spinal injuries, convulsions, fits, epilepsy, nor any permanent defect as a result of disease or accident. The application form above the space for applicant's signature states:
"I further understand that any misleading or incorrect statement may invalidate the questionnaire, and if employed would be cause for my immediate discharge."
In the hearing before an Industrial Commission referee, the following items of testimony were presented. Claimant did not reveal his epilepsy because he knew his condition was controlled with medication and would have no effect on his job performance and further, he feared he would be denied employment if the fact of his condition were known. Claimant's supervisor, Platt, learned of his condition from the company doctor and made the decision to discharge claimant prior to the Tuesday, August 6th meeting solely on the basis of the employment application. Following the Tuesday meeting, either that afternoon or on the following day, Platt checked the Industrial Commission records and discovered reports of the injuries of which claimant had made no mention on his application form. Dr. Jacobsen, the employer's physician, stated that Time, D.C., Inc. had a police not to hire epileptics. Platt denied the existence of such a policy, and asserted claimant had been discharged for dishonesty based on the employment application falsification. An expert testified that 50% of all epileptics are completely controlled by medication and that 25% are significantly controlled. There was no evidence that the July 31 accident was in any way caused by claimant's epileptic condition.
*1359 The referee found that the claimant was discharged because of the misrepresentations made by him in his application for employment and that since the claimant was responsible for his separation from full time work, the deputy's initial decision denying benefits was affirmed. On appeal to the Industrial Commission, claimant urged that his false statements were not material to his job qualifications and that therefore he should be awarded full benefits. The referee's decision was affirmed.
At the time of the discharge, the employer only knew of claimant's epileptic condition and his failure to reveal such condition on the employment application. Knowledge of misrepresentations as to other injuries was obtained subsequently to claimant's discharge and is irrelevant to the question of which party was responsible for the termination of employment. The issue presented on this review is whether the Industrial Commission erred in failing to determine if the falsifications by petitioner as to his epileptic condition were material to his job performance.
The claimant argues for a rule which would require that if a falsification on an employment application results in the subsequent termination of the job obtained through that application, the applicant would still be entitled to unemployment benefits unless that falsification is found to be material to the applicant's job performance. We are persuaded that such a standard of materiality should be adopted.
The narrow question decided here is not controlled by Colorado statute or judicial construction. In Industrial Commission v. Bennett, 166 Colo. 101, 441 P.2d 648 (1968), however, the Supreme Court did approve a test of materiality regarding false statements on an application for unemployment compensation benefits. And, similarly, § 8-81-101, C.R.S., 1973, also requires that false statements be material before penalties may be imposed on those violating employment security laws. See also Industrial Commission v. Emerson Western Co., 149 Colo. 529, 369 P.2d 791 (1962). These authorities suggest that in determining the effect of false statements in employment applications upon claims for unemployment benefits, a standard of materiality should be utilized.
Precedent from other jurisdictions directly bearing on the question is even more convincing. In Lattanzio v. Unemployment Compensation Board of Review, 461 Pa. 391, 336 A.2d 595 (1975), the Supreme Court of Pennsylvania held that a claimant terminated from employment because of the length of his hair could not be precluded from receiving unemployment benefits. The principle articulated in Lattanzio is that an element of an employee's character "not essential to the proper performance of the duties to which he would have been assigned" cannot be a basis for denial of unemployment benefits, even though the employer might be entitled to refuse to hire or to discharge the employee on such grounds. The state of Illinois has also adopted the rule that statements on employment applications must be materially false before a discharge based on such falsifications will result in the denial of unemployment benefits. Roundtree v. Board of Review, 4 Ill.App.3d 695, 281 N.E.2d 360 (1972); People v. Hurley, 16 Ill.App. 2d 503, 149 N.E.2d 109 (1958).
The Industrial Commission argues that the application of a rule of materiality in these circumstances will encourage false statements on employment applications and deprive employers of a vital screening process in the selection of employees. As to the encouragement of misrepresentations, we conclude, as did the court in People v. Hurley, supra, that there is no "condonation falsehood" when a court insures that employees are "shielded against arbitrary or even, at any future itme, partisan action of commissions established for their protection." Nor is the employer unduly burdened by the rule stated here. He retains as much latitude to select and discharge employees as he previously possessed. But the employer may not, by premising a discharge on an immaterial *1360 untruth, deprive the employee of a system of benefits mandated by law for the employee's protection.
Petitioner has further urged this court to hold as a matter of law that the fact of his being an epileptic is not material to the employment relationship. This we decline to do. Claimant was discharged for falsifying his employment application. While the case is colored by allegations of discrimination against epileptics on the part of the employer, and the plight of the epileptic employee is depicted forcefully in the evidence, the existence of illegal discrimination is not before the court. We hold only that before an employee who is discharged for falsifying his employment application may be denied unemployment compensation benefits, the false statements on the employment application must be found to be material to the employee's ability to perform properly the duties for which he was employed.
Since the commission failed to make findings on the materiality of claimant's false entries on the employment application, the cause is remanded for a factual determination as to whether claimant's failure to state his epileptic condition was a material misrepresentation. See § 8-53-116, C.R.S.1973; Womack v. Industrial Commission, 168 Colo. 364, 451 P.2d 761 (1969).
Order set aside and cause remanded for further findings consistent with this opinion.
RULAND, J., concurs.
PIERCE, J., dissents.
PIERCE, Judge (dissenting):
As a matter of public policy, I do not believe that we should condone deliberate falsehood, material or otherwise, whether it is used to obtain a job or any other benefit that the truth might deny. Claimant deliberately falsified his job application, and the Commission was therefore justified in finding that claimant was basically responsible for his termination. Section 8-73-108(7)(a), C.R.S.1973; Industrial Commission Regulation No. 39(C) (1974).
The majority has based its determination in part on § 8-81-101(1)(b), C.R.S.1973, I interpret this statutory section to apply only to false statements in applications for unemployment compensation following termination from employment, and not to misrepresentations which may have been made at an earlier date in a job application.
It may be that the claimant has a valid basis upon which to contest his discharge or to obtain other relief on the ground of illegal discrimination, but that is not the gravamen of this action, nor is it the issue before us.
I would affirm the order.