613 P.2d 380

Lawrence D. WOODHAMS, SSA 521 72 6241, Claimant-Appellant,

v.

ORE–IDA FOODS, INC., Employer, and State of Idaho, Department of Employment, Defendants-Respondents.

No. 13149.

Supreme Court of Idaho.

July 1, 1980.

Louis Garbrecht, III, of Bennett, Powers & Garbrecht, Twin Falls, for claimant-appellant.

David H. Leroy, Atty. Gen., R. LaVar Marsh, Roger B. Madsen, Deputy Attys. Gen., for Dept. of Employment.

Larry C. Hunter of Moffatt, Thomas, Barrett & Blanton, Boise, for Ore-Ida Foods, Inc.

PER CURIAM.

Lawrence Woodhams was employed by Ore-Ida Foods, Inc. in September of 1976, working satisfactorily and without incident until summarily discharged some twenty months later. His application for unemployment benefits, though not initially opposed by Ore-Ida, was turned down by the Department of Employment.

Woodhams for all of his life has suffered epilepsy seizures. In applying for benefits, he stated that Ore-Ida grounded his discharge on his failure, in applying for work at its plant, to enter a checkmark to indicate that he had had "epilepsy or fits." The evidence supports the Commission's findings that Woodhams' fellow employees at the plant were aware of his affliction, and that he made no attempt to conceal it. It equally appears that when he applied for work he had been seizure-free for over six years.

He had no seizures while on the job, and the seizure which precipitated his discharge—for having given false information as to his physical condition—occurred at his home, with fellow employees passing the news of this reason for his absence on to his supervisors.

A factual issue resolved against Woodhams by the Commission, and hence binding on us, is his contention that at the time he was employed he orally advised his interviewer of his condition, and was advised, in light of his six problem-free years, to answer on the application as he did.

In *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 556 P.2d 859 (1976), the issue was similar. There Wroble was discharged and unemployment benefits denied because of misconduct in not giving full and accurate information as to previous employment, where the giving of such information on an application was the employer's rule. Here, the application form signed by Woodhams clearly stated that the giving of false information was grounds for termination.

In *Wroble* we noted a Commission finding that Wroble "had inadvertently omitted from his application a temporary two-week employment with the post office in 1969." We reversed the Commission's decision, saying:

"We do not perceive the legislative intent in enacting I.C. § 72–1366(e) nor do we construe our opinion in *Oliver v. Creamer Heating & Appliance Co., supra*, to require that any violation of *any* rule of an employer will, per se, constitute misconduct such as will result in the denial of unemployment compensation benefits upon discharge. While an employer may make almost *any* kind of a rule for the conduct of his employees and under some circumstances may be able to discharge an employee for violation of *any* rule, such does not, per se, amount to 'misconduct' constituting a bar to unemployment compensation benefits.

"Here, if misconduct there was, it came from the claimant's nonconformance with the letter of the rule enunciated by the employer. Here, there appears to be no *deliberate violation* of the spirit of the rule.

.   .   .   .   .

"Given all of the above facts as found by the Commission the record simply does not support any deceitful intent on the part of the claimant in concealing previous employment history for the purpose of obtaining employment. All inferences are to the contrary. Therefore we hold that there is not shown any *deliberate* violation of the spirit of the employer's rules."

97 Idaho at 902–903, 556 P.2d 859, 861–62. In *Wroble* the Commission did not express itself on Wroble's "deceitful intent."

Woodhams, on the other hand, runs head-on into a Commission finding that he was possessed of a "deceitful intent" in not truthfully answering the questions on his application, thus effectively shutting the door on Woodhams' chances for another *Wroble* decision by this Court.

Woodhams has also raised the issue that the employer failed to comply with the requirements of the Rehabilitation Act of 1973, 29 U.S.C. § 793(a). Since Woodhams was discharged because of the falsification of an application form, rather than because of his handicap, we find it unnecessary to consider what implications, if any, an affirmative action program might have on an employer's discharge of a handicapped employee.

The decision of the Commission is affirmed. *Jenkins v. Agri-lines Corp.*, 100 Idaho 549, 602 P.2d 47 (1979); *Oliver v. Creamer Heating & Appliance Co.*, 91 Idaho 312, 420 P.2d 317 (1966); *Johns v. S. H. Kress & Company*, 78 Idaho 544, 307 P.2d 217 (1957).

BISTLINE, Justice, dissenting.

To my mind, the issue presented by Woodhams—whether his falsification of his application was "misconduct" such that he should be precluded from recovering benefits—is a mixed question of law and fact, and this Court should be bound by the determination made by the Commission. On that basis we should affirm.

However, this Court in *Johns v. S. H. Kress & Co.*, 78 Idaho 544, 307 P.2d 217 (1957), took unto itself the power to reverse findings such as this. Where the Court continues making ultimate decisions whether or not the given misconduct in question is such as to preclude recovery of benefits, as will be apparently so until *Johns* is discarded, I cannot agree that this decision should be affirmed.

I.C. § 72–1366(e) states that a claimant is ineligible for benefits if his unemployment is due to the fact "that he was discharged for misconduct in connection with his employment." We noted in *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 902, 556 P.2d 859, 861 (1976), that "[p]rior cases of this Court have involved misconduct as being disregard of the employer's interests or disregard of the standards of behavior." Under the facts of that case we held that § 72–1366(e) required a deliberate violation of an employer's rules, with a deceitful in-

tent on the part of the claimant, before the claimant lost his eligibility; since there was no evidence of any deliberate violation of the rules, we reversed the decision of the Commission denying Wroble benefits.

In *Wroble* we said that the falsification must have been deliberate; I would go one step further and hold that the falsification must be job-related and detrimental to the interests of the employer. Why punish the claimant where the failure to disclose the information was in the justifiable belief that the withholding was necessary in order to gain employment, and did not result in one iota of harm to the employer, the "deceitful intent" being aimed not at harming the employer, but at becoming employed? While the employer may still be within his rights in discharging the claimant, the withholding of unemployment benefits, at the hands of a state agency, seems both uncharitable and unwarranted.

Although Justice Keeton wrote in *Mandes v. Employment Security Agency*, 74 Idaho 23, 31, 255 P.2d 1049 (1953), in a dissenting opinion that the majority opinion in that case allowing benefits "lets the bars down and opens the flood gates for unauthorized claims," nevertheless he also pointed out therein that "[t]he legislature declared in no uncertain terms that the purpose of the law is to provide 'for the benefits of persons unemployed through no fault of their own.'"

I submit that the entire membership of the *Mandes* court, which was the same constituency of the court three years later in *Johns v. S. H. Kress & Co.*, notwithstanding their decided split on the liberality of purpose of the Unemployment Security Law, would have been unanimous in allowing benefits for Woodhams. Woodhams essentially became unemployed through no fault of his own, that is, unless it can be said with any grace that being afflicted with epilepsy is some fault in the man. As Justice Keeton wrote in *Mandes*, the Act proposed that the claimant who should not receive benefits was the claimant "who wilfully fails to produce work which might be reasonably expected of him, or who is discharged for

failing to carry out a reasonable, proper order in connection with his employment, or one who wilfully and voluntarily abandons his job without notice or without excuse . . . " *Id.* at 31, 255 P.2d at 1054. In short, Justice Keeton, with Justice Taylor concurring, believed that the discharge, in order to sustain a denial of benefits, had to be for job-related misconduct—not for concealing a potential disability the disclosure of which reasonably could have been expected to result in not being hired in the first place.

In this case the Commission found that '[t]he concealment of the medical history was a violation of the employer's rules and also a deliberate violation of the employer's interests because it deprived the employer of its right to assign the claimant to work which would not be hazardous to the claimant, employer, or other employees." Although this finding might be read as an implicit finding that Woodham's falsification was job-related and detrimental to the interests of the employer, I do not believe that there was substantial and competent evidence to support such an implicit finding.

The only hazard shown here was that if Woodhams had a seizure, he might fall into moving machinery or off a deck onto someone else. There was no evidence that he was more likely than anyone else to suffer a loss of consciousness. I would not hold as a matter of law that an epileptic who has not had a seizure in over five years can never safely work in any type of job that poses any danger if he should subsequently have a seizure.[1] Since no evidence was introduced on the issue of the likelihood of Woodhams' having a seizure, beyond Woodhams' testimony that he hadn't had one in over five years before he filled out the application, I would remand this case for a determination of the actual detriment to Ore-Ida posed by Woodhams' falsification.

Woodhams filed his claim for benefits on September 6, 1977, over two and one-half years ago. This is typical of unemployment claims that come before this Court, and this time lapse between the filing of a claim and its final resolution ought to be brought to a halt, ere claimants will be receiving old age benefits before they receive any unemployment benefits. The greater portion of the time span intervening between filing of a claim and ultimate disposition would disappear were the Court to hold that Commission decisions may be interfered with by this Court only when there is a pure question of law. On questions of fact, and mixed questions of fact and law, earlier finality of unemployment claims—in itself a quality of great desirability—is an end toward which there should be judicial abstention in favor of administrative expedience.

---

1.  California has apparently amended its vehicle code to allow epileptics who have not had a seizure within the last three years to obtain a driver's license. Cal.Veh.Code § 12805. Surely if one who has not had a seizure in three years may drive a car, one who has not had a seizure in over five years might work near moving machinery.