691 P.2d 1173

**Ken BROWN, Claimant-appellant,**

v.

**IOWA BEEF PROCESSORS,**
**Employer-respondent,**

and

**Idaho Department of**
**Employment, Respondent.**

No. 14977.

Supreme Court of Idaho.

April 20, 1984.

On Rehearing Dec. 4, 1984.

Carolyn Seneca Steele, Idaho Legal Aid Services, Inc., Boise, for claimant-appellant.

Kenneth L. Mallea, of Givens, McDevitt, Pursley, Webb & Buser, Boise, for employer-respondent.

Jim Jones, Atty. Gen., Larry F. Weeks, Deputy Atty. Gen., Boise, for respondent Dept. of Employment.

BAKES, Justice.

Claimant pleaded guilty to a charge of "driving while intoxicated" and was given a "withheld judgment" pending successful completion of a one-year probation. The case was dismissed in February of 1979, after probation. In September of 1979, claimant was hired by Iowa Beef Processors. On his employment application claimant answered "no" to the following question:

> "Except for minor traffic offenses, have you ever entered a plea of guilty or no contest to any criminal charge, or has a finding ever been made by a judge or jury that you were guilty of a criminal offense? You must answer the question "yes" if you have ever so pled or been found guilty of a criminal offense, even if no judgment or conviction is shown on the record."

At the end of the application, claimant signed the following certificate:

> "I hereby certify that statements made in this application and related information are true and accurate to the best of my knowledge, and that any misstatement or material omission may be the basis for not hiring me or may be cause for suspension or dismissal if I am hired ...."

Early in 1982, while investigating thefts from employees' lockers, the employer was informed by law enforcement officials that claimant had a "criminal record." The employer questioned the claimant who then informed the employer of the withheld judgment and other subsequent criminal proceedings. The employer subsequently discharged claimant for supplying false information on the job application. Claimant has applied for unemployment benefits

which were denied by a decision of the Industrial Commission.

A claimant is eligible for unemployment benefits if the claimant's "unemployment is not due to the fact ... that he was discharged for misconduct in connection with his employment." I.C. § 72–1366(e). The issue presented is whether the claimant's answer of "no" to the question, concerning his criminal record, on the employment application constitutes "misconduct" within the meaning of I.C. § 72–1366(e). We have previously defined "discharged for misconduct" as a:

"willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of the standards of behavior which the employer has the right to expect of his employees." *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957).

We have also held that false information given with "deceitful intent" on an employment application is grounds for discharge for misconduct, *Woodhams v. Ore-Ida Foods, Inc.*, 101 Idaho 369, 613 P.2d 380 (1980), but an inadvertent omission on an employment application without "deceitful intent" is not an adequate basis to discharge an employee for misconduct, *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 556 P.2d 859 (1976). In the present case, the Industrial Commission found that "the claimant here intended to deceive the employer when he filled out his employment application." *See Woodhams v. Ore-Ida Foods, Inc., supra.* This finding is adequately supported by the claimant's testimony that he believed he would not get hired if he answered "yes" to the question. Also, in claimant's "unemployment insurance interview" while applying for benefits, claimant stated in his own handwriting:

"I did feel that my police record might prevent me from gaining employment so

I did not enter it on my application form."

The commission also made a factual finding that the claimant was discharged because of the false application answer. This finding was based on the testimony of the employer's plant manager and personnel director. Although there was conflicting evidence on both issues, the Industrial Commission is the ultimate factfinder, and we are bound by these facts. *Hutchinson v. J.R. Simplot Co.*, 98 Idaho 346, 563 P.2d 404 (1977). In view of the factual findings of the commission and the supporting evidence, we affirm the commission's decision that claimant was "discharged for misconduct" within the meaning of I.C. § 72–1366(e) and is therefore not eligible for unemployment benefits. *Woodhams v. Ore-Ida Foods, Inc., supra.*

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

Although the Court's opinion reads well, it does not do justice to the extensive research which has gone into the brief submitted by counsel for the claimant. The opinion simply compares *Woodhams* to *Wroble*, and declaring itself bound by the factual finding of the Commission that "the claimant here intended to deceive the employer when he filled out his employment application," summarily affirms the denial of benefits. The opinion points to "the claimant's testimony that he believed he would not get hired if he answered 'yes' to the question"—the question being that set out in the Court's opinion.[1] And the Court also seizes upon the statement in claimant's own handwriting that "I did feel that my police record might prevent me from gaining employment, so I did not enter it on may application form." Such is what the Court believes to be adequate substantiation of the finding that the claimant intend-

---

1. For ready reference:

"Except for minor traffic offenses, have you ever entered a plea of guilty or no contest to any criminal charge, or has a finding ever been made by a judge or jury that you were guilty of a criminal offense? You must answer the question 'yes' if you have ever so pled or been found guilty of a criminal offense, even if no judgment or conviction is shown on the record."

**560**

ed to deceive his prospective employer AND which amounts to willful misconduct precluding him from benefits.

### I.

The majority issuing the opinion for the Court, in my view, errs in isolating the two statements from the context in which made, and further errs in seeing the issue as one of claimant's deceit. The warning set out in the Court's opinion advised the claimant only that he would be dismissed for "misstatement or material omission." The theme of the Court's opinion in *Wroble* was whether or not that claimant's omission in filling out the application form was *"deliberate."*[2] Justice Bakes, writing separately, was there of a view, which if he adhered to it here, would suggest a result in favor of the claimant:

> "The legislature has not defined misconduct in I.C. § 72–1366(e), and therefore this Court must do so, consistent with what we perceive to be legislative intent. It is manifest that the legislature did not intend that misconduct such as would bar recovery of benefits under the act would be defined by the employer.
>
> "The Industrial Commission found that the reason Wroble deliberately failed to list all of his previous employment experience was that he felt constrained by the time deadline for applications, that he believed that other past employment was not relevant to surveying work, and also that he had forgotten about the 1969 Post Office position. Based on these findings, *I agree that as a matter of law Wroble's failure to include this data on his application form did not constitute misconduct sufficient to bar recovery of benefits under the Employment Security Law."*
>
> *Wroble,* 97 Idaho at 904, 556 P.2d at 863 (emphasis added).

At the hearing before the Commission's referee the claimant was asked and answered as follows:

"Q. Okay. I would like to show you now Exhibit Number 12, your job application and ask you please to read this question, which is identified by the capital 'general', please read the question.

"A. 'Except for minor traffic offenses, have you ever entered a plea of guilty or no contest to any criminal charge or has a finding ever been made by a judge or jury that you were guilty of a criminal offense? You must answer this question yes if you have ever so pled or been found guilty of a criminal offense, even if no judgment or conviction is shown on the record.'

"Q. How did you answer that question?

"A. 'No.'

"Q. Were you telling the truth when you answered that question?

"A. I believed I was telling the truth."

Tr., p. 17.

"Q. The second incident was driving while intoxicated. The record below shows this took place on September 1st of 1977. Do you recall being arraigned for this offense?

"A. Yes.

"Q. Do you recall how you pled at the arraignment?

"A. I pled not guilty at the arraignment.

"Q. Did you have a trial?

"A. Yes.

"Q. About how much time passed between the arraignment and the trial, approximately?

"A. I believe it was a couple of weeks.

"Q. Okay. Do you remember the judge at the trial?

"A. The judge was Judge Gillespie.

"Q. Where did the trial occur?

"A. At Kootenai Courthouse on Kootenai and Federal Way.

"Q. *Is that traffic court?*

"A. Yes.

---

**2.** The words "deliberate" and "deliberate violation of the employer's rules," and "deliberate violation" were therein emphasized by use of italics.

"Q. Was this your first offense of DWI?

"A. Yes.

"Q. *Do you know whether or not that offense was a felony or a misdemeanor?*

"A. *I believed that it was a misdemeanor.*

"Q. Did you have to pay any bond to be released at the arraignment?

"A. No.

"Q. How did Judge Gillespie dispose of this case when you went to trial at traffic court?

"A. When I went to trial, they had a video of me when I was taken in. It had shown that I was pretty intoxicated at the time of arrest. And she felt that I should plead guilty and I would get a year's probation and DWI—or alcohol abuse school and a withheld judgment.

"Q. Did Judge Gillespie explain to you what a withheld judgment meant?

"A. Yes. She explained that the withheld judgment could be set aside through my probation period and if I was to stay out of trouble and no other crimes or anything that was committed that it would be set aside . . . ."

Tr., pp. 18–19 (emphasis added).

"Q. You successfully completed the probation—did you successfully complete the probation?

"A. Yes.

"Q. Okay. If I'm correct, you filled out the application to work at Iowa Beef about seven months after you had finished the probation successfully; is that right?

"A. Yes.

"Q. When you filled out the application, why didn't you list that DWI?

"A. Because when Judge Gillespie explained that withheld judgment, I didn't feel that with it not being on my record or nobody had access to it but her, that *it was like it wasn't even there.*

"Q. Did you feel you were deceiving the company when you answered that question 'no'?

"A. *No."*

Tr., pp. 21–22 (emphasis added).

"Q. The transcript below shows that you were questioned also about your prior job application. Did you explain to them why you answered 'no' to that question?

"A. Yes.

"Q. You did?

"A. Yes.

"Q. What explanation did you give them?

"A. I had explained to them that the reason I didn't mark 'yes' was because of the withheld judgment and that it is not even supposed to be there.

"Q. Did you give them any other explanation?

"A. I had—then I had explained to them that I was afraid at the time that I wasn't going to be able to get the job and that I was just settling down and getting my family settled.

"Q. Which of those two reasons was most important in your mind?

"A. The withheld judgment."

Tr., p. 23.

A review of the documenting exhibits from whence the majority plucks the isolated statement in claimant's own handwriting also discloses that claimant at all times was straightforward with the reason for his discharge. The initial determination made by the claims examiner is as follows:

### "FINDINGS OF FACT

"When you filed your claim for benefits, you stated you had been terminated because your employer believed you gave them faulty information on your application for work. There had been several thefts at the plant and because of this several persons were questioned. You were one of those persons questioned and you were told that the reason was that you had always been in the area when the thefts took place. *They questioned you as to your background and you told them you had been charged with a DWI in 1978.* They then looked at your application and found out you had not

entered this. *You explained that you had been found guilty but judgment was withheld pending results though you won your probation.* Because of this withheld judgment you did not put this on your application for work.

"As of this date, your employer has not responded to your separation statement. Therefore, our determination will be based on the facts available.

## "CONCLUSIONS

"Misconduct is defined as a willful disregard of the employer's best interests or the standards of behavior that an employer has the right to expect. It is up to the employer to establish misconduct. You have given a reasonable explanation as to why you did not report the DWI on your application for work. Your employer has not responded to your separation statement giving any details concerning your termination. Therefore, no misconduct has been established in connection with your employment.

## "DECISION

"You are eligible for benefits effective 4–11–82." (Emphasis added.)

Thereafter the employer did respond during the fourteen-day period allowed in which to request a redetermination. The Employer's Statement, submitted by a Mr. Dan Smoots, opened with the declaration that "Ken was terminated for falsifying his records," but added nothing to that which claimant had previously informed the Claims Examiners other than to establish that the disclosure of the 1977 DWI was *voluntarily* given, and "Ken was asked why he hadn't put that down on his application for employment. His *first* statement was that he didn't believe we would hire him." The Statement concluded as it opened: "Marty explained to Ken ... that we were terminating Ken for falsifying information on his application."

Claimant's response, which appears to have been written by someone considerably more literate than claimant,[3] is found on a DOE form signed by him. Therein, as pertinent, this is said:

"I did feel that my police record might prevent me from gaining employment so I did not enter it on my application form. ... [T]he DWI resulted in a withheld judgment. I felt also that because of this I need not enter it on my application. I did feel some pressure however that I might not get hired if I brought it out."

Although somewhere along the line the investigation of the claim centered on whether the claimant intended to deceive his prospective employer, such was not the grounds for his termination. Mr. Smoots made it quite clear indeed by twice saying that claimant was terminated for falsifying on his application. That is the issue, and a large part of that issue which has not been adequately or fairly addressed by the majority is whether it was a deliberate violation of the employer's requirement (rule) that a *material* omission in filling out the application would justify a dismissal. If it was not a deliberate violation, even though it would justify a dismissal, it cannot be said to be a dismissal which amounted to misconduct disqualifying the claimant from benefits. It becomes in order to first consider whether the claimant even made a *material* omission.

It is obvious that the employee's question was so drawn as to except minor traffic offenses. Although the employer could have easily spelled out that DWI charges were not to be considered minor, it did not do so. This the employer could have done, notwithstanding that a charge of DWI is only a misdemeanor. But it did not do so. The lack of a specific requirement that claimant report his DWI guilty plea absolutely precludes his being held guilty of misconduct. In Idaho, at that time, there were serious traffic offenses, and there were minor traffic offenses. I know not how the other members of the Court cate-

---

**3.** The form is called an interview, and the signature of the interviewer is that of J. Nelson, whose handwriting resembles that setting out the interview statement. I do not see this as being of any moment, other than to correct the majority's incorrect impression.

gorize them, but for years and years traffic offenses were either misdemeanors or they were felonies. The felonies of which I knew were second offense DWI, and motor vehicle manslaughter. These could not be classified as minor traffic offenses, i.e., misdemeanors. When we heard oral argument this is what I thought this case was all about. If the claimant was not under an obligation to report a minor traffic offense, then he cannot be penalized by withholding from him (and his wife and children) the benefits which the law makes available to those who are discharged through no fault of their own.

Frankly, one would think that the majority might take some note of the testimony of Martin D. (Marty) Gilbert, manager for the employer's Boise plant. Mr. Gilbert made it clear that had claimant experienced the DWI *after* he had gone to work, "Ken Brown would still be working for us." But it had occurred prior to claimant's application, and Mr. Gilbert thought it was a felony, or so he testified in response to a question by the Referee. Tr., p. 15. Counsel for the employer then took the witness:

"Q. Mr. Gilbert, you have used the term 'felony' in relation to what Mr. Brown was convicted of. What do you mean by that?

"A. Well, what the questions states is anything other than a minor traffic violation. I'm just going beyond that statement.

"Q. You think anything in excess of a minor traffic violation falls in the term when you use the term 'felony'?

"A. To me, anything that you would have to place a bond on to get out of jail is a felony. I'm not up on legal terms. That's why I make calls to ask."

Tr., p. 15.

It is at once obvious that the employer, its counsel, and its witness were aware that the claimant, in submitting his job application, was not required to list any DWI charges which were misdemeanors, and accordingly he was not guilty of falsifying when he omitted that item. Closing arguments made to the referee are not in the Reporter's Transcript, but it is also obvious that the employer must have switched his case theory from falsifying by material omission to intending to deceive the employer. Notwithstanding that the Referee, the Commission, and now this Court, predicate their decisions on the warning language of the job application form, there is a complete failure of any finding that the claimant was in fact guilty of a material omission. There is no finding that the DWI charge was other than a minor traffic offense. The Referee simply ducked the issue:

"The claimant asserted that he was unsure whether driving while intoxicated was a 'minor traffic offense' or a 'criminal offense' but he felt that it was probably a minor traffic offense because he had a withheld judgment and the judge had explained that he would have no criminal record as a result. He also stated that he believed that IBP would not have hired him if he answered the question affirmatively. Based upon the claimant's statement that IBP would not have hired him if he had not answered 'no' to the question on the job application quoted in paragraph II above, the Referee concludes that the claimant intended to deceive IBP when he marked 'no' in answer to that question."

Finding of Fact VIII, R., p. 11.

Notwithstanding that the Referee was well aware that claimant's omission, as per the job application itself, had to be *material,* the Referee allowed himself to be sidetracked with the nebulous and irrelevant question of finding an intent to deceive:

"In the case at hand, the claimant was discharged for falsifying his application for employment. The application stated that the claimant could be fired for misstatements or material omissions on the application. As in *Woodham [Woodhams] v. Ore-Ida Foods, Inc.,* 101 Idaho 369, 613 P.2d 380 (1980), the claimant here intended to deceive the employer when he filled out his employment application. Therefore, the claimant's unemployment is due to the fact that he was

discharged for misconduct in connection with his employment, so he is not eligible for unemployment benefits."

Conclusion of Law III, R., p. 12.

The Referee ended by concluding that the facts before him were on a par with *Woodhams.* Even if one were to accept, arguendo, that claimant Brown was guilty of deceitful nondisclosure, the company's instruction had placed him under no obligation to report minor traffic offenses. At best his testimony and statements amounted only to a candid belief that if he were to have volunteered the information about the DWI charge, he was fearful that he might not get the job. Nothing in the statements or testimony of the employer, however, suggests in the least that he would not have been hired, and on the contrary, I read the record as suggesting otherwise.

But, in *Woodhams* the Commission, while it did see a deceitful intent relative to a misstatement made on the job application, the Commission also found that the falsification was *deliberate and material.* Woodham withheld that he was afflicted with epilepsy and the hazard of employing him was that if he had a seizure he might fall into the moving machinery or off a deck onto someone else. The Commission so recognized by stating in a finding that:

> "The employer has an affirmative action plan for hiring of disabled or handicapped individuals. If the employer had been aware of the claimant's medical history at the time of employment, the claimant could possibly be employed under this plan. The employer could have made an effort to assign the claimant to a location where he would have been able to work safely if the claimant had not concealed his condition."

and in a Conclusion of Law stating:

> "The concealment of the medical history was a violation of the employer's rules and also a deliberate violation of the employer's interests because it deprived the employer of its right to assign the claimant to work which would not be hazardous to the claimant, employer, or other employees."

The Commission in *Woodhams* unduly emphasized the element of deceit as mentioned in *Wroble.* The *holding* in *Wroble,* and so designated in the opinion was "that there is not shown any *deliberate* violation of the spirit of the employer's rules." 97 Idaho at 903, 556 P.2d at 862 (emphasis original). The "deceitful intent" language only crept into *Wroble* in connection with this Court's observation of a Commission finding "that claimant had inadvertently omitted from his applications a temporary two-week employment with the post office in 1969." 97 Idaho at 902, 556 P.2d at 861. That which is inadvertent can hardly be intentionally deceitful. This Court's inclusion of the word deceitful added nothing, and in fact in *Woodhams* this Court, after quoting from *Wroble,* saw fit to add that "In *Wroble* the Commission did not express itself on Wroble's 'deceitful intent.'" 101 Idaho at 370, 613 P.2d at 381.

In sum, while a deceitful intent might have been a proper element in determining whether the claimant in *Woodhams* made a material misrepresentation on his job application, it cannot equally be said here that claimant Brown is guilty of a material omission in not listing a minor traffic offense. Such is the issue which the Court does not this day decide, or even mention.

II.

Other courts, operating under basically the same federally-related Employment Security Law have done better. Cases brought to our attention in the well-researched brief of counsel for claimant are in tune with our *Wroble* decision (from which we seem to be departing), requiring both a deliberate and material omission or misstatement.

In *Unemployment Compensation Board of Review v. Dixon,* 27 Pa.Cmwlth. 8, 365 A.2d 668 (1976), the claimant was discharged solely because when he first applied for work he had recorded on an application that he had no record of arrests when in fact he had such a record, the existence of which the employer ascertained as the result of an anonymous tele-

phone call. Six judges of the Commonwealth Court were agreed that:

"While any deliberately false answer to an inquiry on an employment application would appear on superficial glance to fall within one or more of the descriptions of willful misconduct, it seems to us that a profounder view suggests that *the information invited by the application and falsely provided should concern matters material to the employment sought for the errant answer to be disqualifying for unemployment benefits. See Cecchini Unemployment Compensation Case,* 188 Pa.Super. 247, 146 A.2d 615 (1958). The employer has the burden to provide that the employee's discharge was for an act of willful misconduct. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa.Cmwlth. 90, 309 A.2d 165 (1973). Mr. Dixon's employer has not contested his eligibility. Does the record affirmatively show that Mr. Dixon's arrest was material to his employment as an hourly employee of his employer's industrial plant? We think not. It fails to reveal either the nature of the charges upon which Mr. Dixon was arrested or when he was arrested and *does not,* therefore, in our opinion, *support the conclusion that he was guilty of willful misconduct by falsely misstating a matter material to his employment.*

"The Unemployment Compensation Board of Review's brief concedes that the double blow to Mr. Dixon, a husband and father, of loss of job and denial of unemployment compensation, is harsh. We do not agree with its further conclusion that it is in this case, *necessary.*"

668 A.2d at 669 (emphasis added).

In a later case from Pennsylvania, the same court had before it a case where, as here, the Referee declared claimant ineligible for willful misconduct when discharged for having recorded in answer to a question on his job application that he had not been arrested, when in fact he had been arrested. The court there relied on *Dixon, supra,* saying this:

"The Board of Review's conclusion is further supported by our holding in *Unemployment Compensation Board of Review v. Dixon,* 27 Pa.Cmwlth. 8, 365 A.2d 668 (1976). As does the present case, *Dixon* dealt with an employee who was discharged for failure to report an arrest on his job application. We held that in such cases 'the information invited by the application and falsely provided should concern matters material to the employment sought for the errant answer to be disqualifying for unemployment benefits.' 27 Pa.Cmwlth. at 11, 365 A.2d at 669. The record in the present case establishes only that Sgro was charged with a violation of the 'drug act.' The reference is doubtless to the Controlled Substance, Drug, Device and Cosmetic Act. Since Sgro was admitted to the Delaware County A.R.D. program, it is probable that the offense with which he was charged was a relatively minor one under that Act. Certainly we cannot assume that every offense with whcih Sgro might have been charged under the Act would have been material to his employment as a machinist's helper.

"We agree with the Board's decision and affirm it."

*Sun Shipbuilding v. Commonwealth Unemployment Compensation Board of Review,* 35 Pa.Cmwlth. 275, 385 A.2d 1047 (1978).

An extremely well-decided case is *Casias v. Industrial Commission,* 38 Colo.App. 261, 554 P.2d 1357 (976), a case which should have been discussed in our *Woodhams* case, but which was overlooked in both the majority and dissenting opinions:

"The referee found that the claimant was discharged because of the misrepresentations made by him in his application for employment and that since the claimant was responsible for his separation from full time work, the deputy's initial decision denying benefits was affirmed. On appeal to the Industrial Commission, claimant urged that his false statements were not material to his job qualifications and that therefore he should be

awarded full benefits. The referee's decision was affirmed.

"At the time of the discharge, the employer only knew of claimant's epileptic condition and his failure to reveal such condition on the employment application. Knowledge of misrepresentations as to other injuries was obtained subsequently to claimant's discharge and is irrelevant to the question of which party was responsible for the termination of employment. The issue presented on this review is whether the Industrial Commission erred in failing to determine if the falsifications by petitioner as to his epileptic condition were material to his job performance.

"The claimant argues for a rule which would require that if a falsification on an employment application results in the subsequent termination of the job obtained through that application, the applicant would still be entitled to unemployment benefits unless that falsification is found to be material to the applicant's job performance. *We are persuaded that such a standard of materiality should be adopted.*"

554 P.2d at 1359 (emphasis added).

Illinois also requires that non-disclosure of a criminal charge must be material. In *Roundtree v. Board of Review,* 4 Ill. App.3d 695, 281 N.E.2d 360 (1972), the applicant sought to be employed by Wells Fargo Protective Service and indicated on his job application that he had never been convicted of a felony—which was untrue. The Illinois court readily affirmed a Board of Review conclusion that there was an integral connection between the material data requested on the application and the employment gained. 281 N.E.2d at 326. The circumstances of that case, however, are poles apart from the case we review today.

## ON PETITION FOR REHEARING

BAKES, Justice.

The petition for rehearing in the above entitled action was granted and the matter reargued. The Court has reviewed the record, considered the arguments presented by counsel, and continues to adhere to the views expressed and the conclusion reached in the earlier opinion of the Court filed April 20, 1984.

DONALDSON, C.J., and SHEPARD, J., concur.

HUNTLEY, J., dissents.

BISTLINE, Justice, continuing to dissent.

Little more need be said. The majority simply stands fast, adding nothing to its previous opinion which for the most part simply yields to the proposition that the Industrial Commission having found that claimant was discharged for misconduct, this Court will not interfere. In an opinion in another case I will shortly write on the distinction between evidentiary facts and ultimate facts. Nothing will be gained by doing so here, where my earlier effort has now on two occasions failed to elicit any response from the other members of the Court on the desirability of adopting a standard of materiality, Part II of my earlier opinion. While I would not have been surprised at my own advancement of this proposition being ignored, this was not original with me, and I merely endorsed what respectable courts of Pennsylvania, Colorado, and Illinois have written. In eschewing the opportunity to either adopt the standard of materiality which prevails in those states, or to cogently explain why this Court should not do so, the Court wholly ignores the proposition—surely not the mark of an enlightened court. The loser in the instant case is Mr. Brown, but the overall losers are both the working public and the employers as well. The Court does nothing. And it does so notwithstanding that it was the Department, not this writer, in the *Woodham* case which first brought to our attention the Colorado case, *Cassia v. Industrial Commission.*

Even without a standard of materiality, the majority continues to err in upholding the denial of benefits to Mr. Brown, largely

for the reasons earlier stated. To which, however, I add that it has been suggested that Mr. Brown did not report to Judge Gillespie at traffic court because, so goes the argument, we have no *traffic* courts in Idaho—only magistrate courts, district courts, and the appellate courts. It is said that what we have are magistrates who are designated to hear traffic cases. Very well, this may be so, and likely is an absolute in the legal minds of the majority. But, on the other hand, there is within the limits of Boise a rather new-appearing, large city-county building which the police in their reports refer to as 7200 Barrister, the building's address. Having occasion to visit that building recently, I was greatly startled to see on the outside of the building in bold letters at least two feet high the two words: "TRAFFIC COURT." Believing that, in the past eight and one-half years of residence in Boise, I have on occasion noticed a mention of traffic court cases carried in the *Idaho Statesman*, I have turned to today's paper, November 28, 1984, and find that my powers of observation and recollection remain unimpaired:

## News of record

### BIRTHS

Born Nov. 26, 1984:

**St. Luke's Regional Medical Center**

LINDLEY — Pamela and Larry, Mountain Home Air Force Base, a son.

Born Nov. 27, 1984:

**St. Luke's Regional Medical Center**

HACKETT — Carla and Greg, 9259 Preece Drive, a daughter.

SAYLOR — Belinda and Leslie, Boise, a son.

GRAVES — Shannon and Dale, Boise, a daughter.

GEBHARDT — Joyce and Karl, Boise, a daughter.

TILTON — Jane and Gary, 2502 S. Owyhee St., a son.

KREIZENBECK — Fawn and David, Emmett, a son.

EGGERS — Debra and Drew, 6823 Center Lane, Nampa, a daughter.

ATKINS — Sharon and Jerry, 7106 San Fernando Drive, a son.

DISOTELL — Jacqui, 3905 Alpine St., No. 22, a daughter.

### MARRIAGE LICENSES

HAWK, Kenneth Dean, and BECKER, Jeanne Marie, both Boise.

SCHIMMEL, James Dean, and MORRIS, Lauren Comele, both Newberry Springs, Calif.

HYNES, Dennis Earl, Seattle, and LAKEY, Connie Jean, Boise.

METCALF, Wayne Armond, and WING, Carol Jean, both Twin Falls.

STEVENS, Adrian Dave, and DARR, Joni Dee, both Star.

BARRUS, James Lucius, Salt Lake City, and FAIRCHILD, LaRae, Boise.

SNEDDON, David Paul, and RENNER, Sherri Lou, both Boise.

### TRAFFIC COURT

SIMON, David Randall, 27, of 106 W. 37th St., Garden City, cited Aug. 18, 1983, for driving under the influence of alcohol, withheld judgment, $500, $250 suspended, $11.50 costs, 10 days jail, suspended, 32 hours community service, one year probation. Judge Morden.

PRIEST, Randell Earl, 41, of 342 E. State St., Eagle, charged Aug. 17 with driving under the influence of alcohol, charge later reduced to reckless driving, $300, $150 suspended, $11.50 costs, five days jail, suspended, one year probation. Judge Flanagan.

BOGGIS, Gary Lee, 40 of 11370 Chapin Ave., cited May 19 for driving under the influence of alcohol, withheld judgment, $300, $11.50 costs, 15 days jail, 13 days suspended, two years probation. Judge Hamilton.

### BOISE FIRE RUNS

7:01 a.m. — 2106 Warm Springs Ave., chimney fire.

7:45 a.m. — 4221 St. Andrews, chimney fire.

12:20 p.m. — 1608 N. 27th St., chimney fire.

3:32 p.m. — 3300 Vista Ave., automatic alarm.

3:54 p.m. — 4907 Denton St., structure fire.

4:03 p.m. — 1220 E. Washington St., structure fire.

6:03 p.m. — 4920 Franklin Road, gasoline fire.

8:25 p.m. — 150 N. Capitol Blvd., automatic alarm.

### OTHER EMERGENCIES

(Includes Fire Department public assistance, ambulance assists and other emergencies.)

2:38 a.m. — 6423 Franklin Road, medical assist.

7:23 a.m. — 2525 Ellis Ave., medical assist.

8:47 a.m. — Gowen Field, aircraft defuel.

5:31 a.m. — 3200 Airport Way, gas wash.

And, yes, Virginia, there is a traffic court. If I had time to go to the paper's morgue, I would not be in the least surprised to find that the *Statesman*'s traffic court report wholly substantiated Mr. Brown's testimony. Nothing in the record whatever refutes his testimony that the charge against him was other than what he believed it was—a misdemeanor being handled in traffic court. Now, if magistrate courts were at any time authorized to handle felony DUI information, I am at fault in not having been aware of the fact.

Counsel for DOE at oral argument insisted that even misdemeanor first offense DUI is not a minor traffic offense—notwithstanding that it is only a misdemeanor. While entitled to such view, which is certainly the popular stance to take in the last year or so, it was not ever thus. Time does not permit me to search out the case, which I do remember was in Twin Falls, but recol-

lection tells me that the defendant in that case who appealed to this Court had had a string of eight to maybe ten or twelve withheld judgments on DUI charges, before he was ever given a jail sentence to serve. We had, and probably still have, statistics here in the building which amply demonstrate that short months ago DUI was *not* the serious offense it is considered to be *now*. Be that as it may, minor traffic offenses in common sense are and have been misdemeanors, and major traffic offenses have been felonies. Nothing ventured, nothing gained. But Legal Aid counsel are to be commended for coming to Mr. Brown's aid in the right case at the wrong time and before the wrong court. Mr. Brown, who was guilty of wanting and probably needing a job, was also guilty of not knowing for certain whether he had or had not committed a non-minor traffic offense, and guilty of speculating that he might not get the job if he incorrectly said he had been *convicted* of a non-minor traffic offense when he hadn't been. Most people would have answered as he did. Nothing in the record sustains a finding that he was intentionally deceiving his employer.

HUNTLEY, J., concurs and withdraws his concurrence in the original majority decision, noting that while the incidence of driving under the influence is a most serious state and national problem, its legal classification for purposes of the issues in this case renders the denial of benefits to Mr. Brown totally unjustified.