420 P.2d 795

George S. OLIVER, Claimant-Appellant,

v.

CREAMER HEATING & APPLIANCE and Department of Employment, Defendants-Respondents.

No. 9758.

Supreme Court of Idaho.

Nov. 28, 1966.

Robert C. Galloway, Boise, for appellant.

Millar & Callister, Boise, for Creamer.

Franklin H. Powell, Boise, for Department of Employment.

SPEAR, Justice.

Appellant, George S. Oliver, appealed from an order of the Industrial Accident Board denying him unemployment compensation and affirming a prior decision of the Employment Security Agency's appeals examiner who had ruled appellant ineligible for employment security benefits under I.C. § 72–1366(f)[1], because appellant had been discharged for misconduct. In the order of the board it is stated:

"The record herein sustains the decision of the Appeals Examiner that claimant's unemployment is clearly the result of his own actions, amounting to misconduct under the terms of the Employment Security Law. By a preponderance of the evidence claimant has failed to prove otherwise. As stated by the Appeals Examiner, whether claimant voluntarily quit or was discharged for such misconduct, the results as to his disqualification for unemployment insurance benefits would be the same."

The facts material to the disposition of this case are substantially uncontradicted. Appellant worked for respondent, Creamer Heating & Appliance Company, herein sometimes referred to as "Creamer" (the owner), for 11 years prior to the termination of his employment on or about Janu-

---

[1] "72–1366. Personal eligibility conditions. —The personal eligibility conditions of a benefit claimant are that—

\* \* \* \* \*

"(f) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment."

ary 22, 1965. The employer, located in Boise, is in the business of installing, repairing and servicing heating and air conditioning equipment, and is owned and operated by Charles A. Creamer. The appellant was the only regular serviceman employed by respondent employer, and in this capacity appellant handled most of the service and repair work which was furnished Creamer's customers. The employer had from 2 or 3 to as many as 12 employees. The other employees, with the exception of appellant and the shop foreman, Eldon Lindbloom, were installers, though capable of performing service and repair work when called upon in emergency situations. However, unlike appellant, the other employees were not experienced servicemen and were not sufficiently experienced to undertake major repairs. Appellant worked almost exclusively as a serviceman and served on installation only when the shop was unusually busy.

Basically appellant worked a 5-day 8-hour week but, because of the nature of his work, appellant was required to remain on 24-hour standby to service emergency calls. Emergency service such as the repair of a furnace or an air conditioning unit was more often required during hot or cold spells in the weather. The responsibility to service such calls was that primarily of the appellant, but he was permitted to arrange for a replacement from among the other employees if appellant wished to get away for a weekend or just simply have a night off. This was done on a rather informal basis and generally he spoke to the foreman who would then secure a replacement. It is admitted by appellant it was not difficult to secure a replacement since the employees capable of repair work desired the overtime pay (time and a half) received for such calls actually made.

The appellant was dissatisfied with this system believing that some sort of rotation system would better enable him to have some time to himself without the responsibility of always being available for emergency repair work on his off hours.

On several occasions appellant complained to the shop foreman that the situation was unfair, but the record does not indicate he insisted on a change or that he even contacted the owner about any change.

On the other hand the evidence discloses appellant was hired as Creamer's only regular service repairman after appellant applied for the position in response to a newspaper advertisement. When appellant accepted the job he was informed of the requirements of the job, including the responsibility of remaining on 24-hour standby call. It is admitted appellant has been the service repairman for the employer for most of his 11 years with the company.

On his off hours, appellant, who had been divorced from his wife, would quite often frequent a local tavern to drink and socialize with friends, and this interfered with his job as service repairman for Creamer. On occasion appellant could not be reached at all though no arrangement for a replacement had been made and at times, as the result of having consumed too much beer, he was unable to respond to a call which was relayed to him. When appellant did make such emergency calls customers frequently found his work unsatisfactory. The employer received complaints from customers that they could smell liquor on appellant's breath; that appellant had been drinking, and that they would prefer appellant would not be sent to their homes since this was offensive to them. Complaints also came in about the work appellant did and customers on several occasions called in to report that equipment which appellant was supposed to have repaired broke down within an hour or two after appellant had left. One of the other employees would have to be dispatched to handle the repair work and such duplication became costly for the employer; in fact it cost the business hundreds of dollars.

Appellant was informed of the complaints which the employer had received concerning his work. The testimony, however, indicates appellant continued to drink during his off hours when he was on standby and

that the problem had, in the last six months, become worse.

The contention appellant principally advances is that it is unfair for the employer to expect him to refrain from drinking on his off hours where his job required him to be on standby emergency call 7 days a week. Appellant feels that it could more equitably have been arranged for him to have been relieved from emergency service on a regular rotation basis and claims the pressure of being constantly on standby was making him nervous. It is not denied by appellant that he drinks, but appellant claims his drinking did not interfere with his work. The record does not substantiate this contention.

Appellant's drinking problem was one of considerably long standing; and the employer had consistently and repeatedly attempted to help him with this problem, even to the extent of furnishing his bail on an occasion when appellant was arrested and incarcerated on a charge of driving while under the influence of intoxicating liquor. The problem became consistently worse and the incident which led to appellant's termination or his voluntary quitting of employment occurred on a Friday night, January 22, 1965, between 9:00 and 10:00 o'clock p. m. A woman customer ill with flu placed an emergency call received by Creamer for a serviceman to repair the furnace in her home. Creamer called appellant at the local tavern which appellant was known to frequent and explained the circumstances to him. Appellant drove to the address but not seeing any lights on in the house returned to the tavern, without ever getting out of the truck, for the ostensible purpose of calling the customer to have her turn on her house lights. About an hour later Creamer, who had in the meantime received an inquiry from the customer, called appellant at the tavern for the second time before appellant was able to make his call to the customer. Creamer asked appellant whether he had made the call. When appellant replied in the nega-

tive, Creamer told appellant to forget it and that a replacement would service the call.

In about another one-half hour appellant called Creamer and asked him whether the call had been made. Creamer responded that the appellant was so drunk he could not make the call. The appellant believed that Creamer then told him not to bother to come in on Monday from which appellant understood he had been fired. Creamer however testified:

"I said, 'George,' I said, 'you're so cockeyed drunk,' I said, 'that you couldn't go on the call.' I says 'as far as I'm concerned,' I said, 'you report to work Monday morning.' I says, 'There'll be no drinking when you're supposed to be on service calls, and,' I said, 'if you come to work', I said, 'there'll be no drinking; otherwise,' I said, 'don't show up for work.'

"Q. You gave him that choice, then of coming sober or not coming at all.

"A. That's right. And so far as I was concerned Saturday when I called him, he still had till Monday to make that decision. * * *"

The next morning (Saturday) Creamer called appellant shortly after 8:00 a. m. and told him there were some service calls which had to be made. Appellant reported to the shop more than two hours later, and all the calls but one had already been dispatched. Appellant made the one call and checked in to determine if there was anything more to which the answer was "no." Appellant did not discuss with Creamer the incident of the night before and made no inquiry about his job status. He explained that the Saturday service calls were something that previously had been scheduled and which he felt obligated to perform, so the fact he was called in Saturday did not lead him to change his conclusion that he had been fired. When appellant did not show up for work Monday, Tuesday or Wednesday, Creamer contacted him and asked him to bring in his shop key. Subsequently appellant filed his claim for unemployment compensation.

Appellant, in his brief and in his counsel's oral argument before the court, urged, first, that the examiner and the Industrial Accident Board erred in not definitely finding whether appellant was fired for cause or whether he quit without cause. The conclusion of the Board that it is immaterial whether claimant voluntarily quit or was discharged for misconduct because either would result in appellant's disqualification for unemployment insurance benefits, is correct. Doran v. Employment Security Agency, 75 Idaho 94, 97, 267 P.2d 628, 630.

Next, appellant contends the finding of the examiner that:

"Necessity demands that an individual in this capacity be available for work on a 24-hour basis in the event of a breakdown."

was erroneous and that the examiner should have considered and discussed appellant's need for time off duty. It is appellant's testimony that being on continual call without let up "started a nervous condition with me." The answer to this, of course, is that there is substantial, competent evidence in the record showing appellant hired out specifically as a serviceman with the understanding he would be on call 24 hours a day 7 days a week. The evidence further discloses appellant could easily have made arrangements for a substitute whenever he desired a night or a weekend off. Additionally, it is uncontradicted that at least one other employee of Creamer's was especially desirous of performing these off-hour additional duties for the time and a half pay over and above the regular wages. Where the findings of the examiner, as approved and adopted by the Industrial Accident Board, are supported by substantial, competent, though conflicting, evidence, they will not be disturbed on appeal. Czarlinsky v. Employment Sec. Agency, 87 Idaho 65, 390 P.2d 822; Hudson v. Hecla Mining Co., 86 Idaho 447, 387 P.2d 893; Ramsey v. Employment Security Agency, 85 Idaho 395, 379 P.2d 797; Watts v. Employment Security Agency, 80 Idaho 529, 335 P.2d 533.

Next, appellant contends that under the Idaho Unemployment Compensation Law:

"The statute is to be liberally construed in favor of the employee."

relying upon Mandes v. Employment Security Agency, 74 Idaho 23, 255 P.2d 1049 (1953). This rule was thoroughly discredited in Custom Meat Packing Co. v. Martin, 85 Idaho 374, 385, 379 P.2d 664, 671 (1963), wherein the court held that as between employer and employee, the law is not to be construed in favor of either. The court reasoned that any other rule would tend to defeat the purpose of the law in that it would result in withdrawals from the fund in some cases in which the recipients were unemployed by reason of their own fault, citing I.C. § 72–1302. The court also quoted from Doran v. Employment Security Agency, supra, as follows:

" 'The law, therefore, enjoins upon the employment security agency, and all those having to do with the administration of the law, the duty of safeguarding the employment security fund from the claims of unworthy and ineligible claimants, so that funds will be available for the relief and benefit of those whom the law seeks to protect. It is for this reason that the burden of establishing eligibility is placed upon, and must be borne by the claimant whenever his claim to benefits is questioned."

As an additional reason for holding against the rule of liberal construction the court pointed out that the suggested rule in favor of the employee would also run counter to the rule firmly established in Idaho, namely, "that the burden of establishing eligibility rests upon the claimants."

Appellant's final contention is that his conduct complained of by Creamer resulted merely in inefficiency and did not constitute willful misconduct of the type necessary to bring appellant within the provisions of I.C. § 72–1366(f). Certainly

appellant's drinking habits during hours when he was subject to service call cannot be deemed involuntary. The evidence indicates this consistent social drinking was willingly and willfully engaged in by appellant and any inefficiency resulting therefrom was induced by the intentional and willful acts of appellant. In O'Neal v. Employment Security Agency, 89 Idaho 313, 404 P.2d 600 (1965), this court re-adopted the definition of "discharge for misconduct" as defined in Johns v. S. H. Kress & Co., 78 Idaho 544, 307 P.2d 217 (1957), as follows:

> " 'While the term "discharged for misconduct" as used in Sec. 72–1366(f), I.C., has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interests; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees.' 78 Idaho at 548, 307 P.2d at 219."

Also in the O'Neal case the court pointed out that basic to the entire employment security law is the declaration of public policy by the legislature embodied in I.C. § 72–1302, which provides, among other things, for the setting aside of a fund of reserves for unemployment to be used for the benefit of "persons unemployed through no fault of their own." The court further held that in a proceeding for benefits under the employment security law, the burden is on the claimant to prove that he has met the requirements and conditions of eligibility for benefit payments; and also that this law does not cover those whose unemployment results from their own fault.

■ The rule laid down by Creamer in the instant case that if appellant were to report to work on the Monday morning following the Friday, January 22nd incident, there would be no drinking when appellant was supposed to be on service call, and that if he did not intend to comply with such condition appellant should not show up for work, is one obviously having a reasonable relationship to the employer's interest. An exhaustive discussion of this problem is contained in O'Neal v. Employment Security Agency, supra. From the several examples of what constitutes a reasonable rule laid down by an employer governing off-duty conduct of his employees cited therein, it is apparent that the condition placed by Creamer on appellant's returning to work was perfectly reasonable. Appellant's failure to return to work indicated an unwillingness on his part to try to comply with that condition. Therefore if the view be taken that appellant quit, he did so without cause. If the view be taken that he was fired, then appellant's misconduct, as set forth herein, justified his discharge.

In either event appellant has failed in his proof that he was eligible for benefit payments under the Idaho Employment Security Law.

The order of the Industrial Accident Board is affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.