663 P.2d 648

Phillip E. COMEGYS,
Claimant-Appellant,

v.

IDAHO AIR NATIONAL GUARD,
Employer, Defendant-Respondent,

and

State of Idaho, Department of Employment, Defendant-Respondent.

No. 14048.

Supreme Court of Idaho.

Feb. 15, 1983.

Rehearing Denied June 9, 1983.

Linda Williams, of Idaho Legal Aid Services, Inc., Boise, for claimant-appellant.

Blair Dee Jaynes, Dennis Jones, Boise, for defendant-respondent Idaho Air Nat. Guard.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Carol Lynn Brassey and Roger Martindale, Deputy Attys. Gen., Boise, for defendant-respondent Dept. of Employment.

SHEPARD, Justice.

This is an appeal from an order of the Industrial Commission denying unemployment benefits to claimant-appellant Comegys. We reverse and remand for further proceedings.

Comegys was employed as a warehouseman for the Idaho Air National Guard. Comegys was discharged in June 1980 for allegedly "issuing approximately 15 worthless checks during the period of June 1979 through December 1979." A policy of the Air National Guard was that an employee could be subjected to "disciplinary adverse action" for "improper conduct on or off the job." A "major" offense subjecting an employee to "removal" was the "deliberate issuance of a check against an inadequate bank account balance or on a bank in which no account exists." The evidence is conflicting regarding Comegys' intent and whether or not some checks were written on a non-existent account.

Comegys applied for unemployment compensation, to which application the Guard responded that Comegys had been discharged for cause. Comegys was determined to be eligible for benefits. Upon appeal to an appeals examiner, it was determined that Comegys was discharged for misconduct in connection with his employment and therefore ineligible for benefits.

That decision of the appeals examiner was in turn appealed to the Industrial Commission where the matter was referred to a referee. The referee issued findings of fact, conclusions of law and an order reversing the decision of the appeals examiner and essentially held that the record did not demonstrate that Comegys' violation of the employer's policy violated a rule relating to job performance or the disregard of standards of behavior which the employer had a right to expect of his employee. *See Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976). Upon review of the referee's decision, the commissioners stated that they "disagree with the result reached by the referee;" and "that the claimant violated rules of the employer" which "constitutes misconduct in connection with his employment, as defined by the Idaho Supreme Court."

Rather clearly, that order of the commission suffers from a number of deficiencies. That order does not either approve or reject the referee's findings of fact nor does it purport to set forth the commission's own findings of fact. Hence, this Court is without any basis to review the commission's order to determine if it is based on substantial evidence. The order of the commission only states the ultimate legal conclusion, *i.e.,* that the conduct of the claimant "constitutes misconduct in connection with his employment." No factual basis is stated therefor, such as the employer's reputation and good name were somehow injured or the conduct of its business was somehow made more difficult.

At this point this Court is faced with a record from which an appeals examiner made findings which are in direct conflict with the findings made by the referee. The conclusions drawn by the appeals examiner and the referee from essentially the same record are also in conflict, and the "result"

reached by the commission from a review of the same record is yet different. Thus, this Court declines to speculate as to which set of findings of fact are appropriate. The cause is remanded to the commission for the preparation of *its* findings of fact, conclusions of law and decision on the basis of the evidence already in the record or such additional evidence as the parties may desire to tender in an additional hearing before the commission.[1]

BAKES, J., concurs.

DONALDSON, C.J., concurs in the result.

HUNTLEY, Justice, specially concurring.

I concur in the majority decision, both as to the result and as to the strict procedural reasons for that result. However, from the standpoint of judicial economy, I would have preferred that we fully determine the appealable issues on the merits in favor of Comegys at this time. To send the case back to the Industrial Commission so it can enter findings supposedly supporting its conclusions, which findings must be made upon the record already before us, will likely result in another appeal to this court in which we will be called upon to determine whether the new findings are supported by this same record.

A review of the hearing record in the instant case indicates that although there were undoubtedly grounds for discharge of Comegys as an employee, there are no grounds for denying his unemployment compensation benefits.

A rule laid down by an employer governing off duty conduct of its employees must have a reasonable relationship to the employer's interests in order for a violation thereof to constitute misconduct as defined by I.C. § 72–1366(e). *Oliver v. Creamer Heating & Appliance,* 91 Idaho 312, 420 P.2d 795 (1966); *O'Neal v. Employment Sec. Ag.,* 89 Idaho 313, 404 P.2d 600 (1965).

1. In the event that the commission shall determine to take additional testimony, we strongly suggest that the status of the claimant be established, *i.e.,* as solely a civilian employee of the National Guard or whether claimant was also military personnel as a member of the National Guard. The record is replete with references to disability retirement and the necessity of a physical exam for determination of fitness for "worldwide duty," all of which suggests to the Court that the claimant may have held a dual status which in turn may bear upon a standard of conduct required of such a dual status employee.

Violation of an employer's rule is not, per se, misconduct; there must be a deliberate and intentional violation of the spirit of the rule. *Wroble v. Bonner's Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976); *Simmons v. Dep't of Employment,* 99 Idaho 290, 581 P.2d 336 (1978).

An employee's indebtedness and harassment by his creditors in matters unrelated to his employment are not sufficient for a finding of misconduct barring eligibility for unemployment compensation. *Jackson v. Administrator of Div. of Employment Security,* 128 So.2d 915 (La.App.1961); *Neely v. Brown,* 161 So.2d 414 (La.App.1964).

An essential element of misconduct is breach of a duty owed to an employer. Violation of a company rule does not constitute misconduct unless the rule embodies a material duty owed to the employer in connection with the job, and the violation of the rule is intentional, deliberate, or with conscious indifference to the consequences. Kempfer, *Disqualifications for Voluntary Leaving and Misconduct,* 55 Yale Law Journal 147 (1945); Packard, *Unemployment Without Fault: Disqualification for Unemployment Benefits,* 17 Villanova L.R. 635 (1972).

In the instant case there is no testimony whatsoever establishing any detriment to the Air National Guard caused by the issuance of the checks by Comegys. With the exception of one creditor, the record actually establishes that the bulk of the creditors had no notice of the fact that Comegys was employed by the Air National Guard until the Guard officers contacted those creditors.

Since the Air Guard officers took action to help the merchants collect the monies due, one might conclude from the record that the image of the Guard as an organization was actually enhanced by the events involved. While Comegys' financial difficulties give him no credit in the eyes of the merchants, the Guard's reputation, wholly apart from Comegys', was likely enhanced.

Since each party has had full opportunity to present its evidence, it would be improper for the Commission to reopen this case for further presentation of evidence. The evidence presented by the Guard does not meet the standards required by the authorities cited above for denial of unemployment compensation benefits. This appeal should result in a reversal with instructions to award Mr. Comegys his unemployment compensation benefits.

BISTLINE, Justice, concurring and dissenting.

Entertaining generally views identical to those of Justice Huntley beginning with the second sentence of his separate opinion, while I concur in reversing, on remand the Court should direct the entry of an award in favor of Comegys.

I disagree with the Court's opinion insofar as it refuses to recognize the Department's concession made at oral argument that it makes no contention that the findings of fact made by the Commission's referee, as found in the record, were in any way overturned, refuted, or set aside by the Commission. The position of the Department was simply that the Commission's conclusion—which it made to replace that of the referee which the Commission struck aside—was not improper.

The referee, after setting out the basic evidentiary facts, made these findings:

"The Employer's written policy provides that adverse disciplinary action can be brought about for improper conduct either on or off the job. There is no testimony in the record as to whether or not the contact by the collection agent or other individuals was detrimental to the operation of the Employer.

"The Referee finds that Claimant was discharged from his employment due to insufficient funds checks. The Referee finds that writing insufficient funds checks was in violation of the employer's written policy." R., p. 30.

Having done so the referee applied Idaho statutory law and case law to the facts at hand:

## "II.

### Misconduct Not Established

"An employer may discharge any employee for any reason. However, not every situation culminating in the employee's discharge renders the employee ineligible for unemployment insurance benefits. Misconduct in the eyes of an employer may not be the kind of misconduct outlined in the Employment Security Law, *Idaho Code,* Section 72–1301, *et seq.,* the absence of which is a condition of eligibility for unemployment insurance benefits.

"Misconduct is an 'act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.' See *Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976); *Watts v. Employment Security Agency,* 80 Idaho 529, 335 P.2d 533 (1959); *Johns v. S.H. Kress & Co.,* 78 Idaho 544, 307 P.2d 217 (1957).

"The Idaho Supreme Court has also stated that misconduct which will justify discharge must be violative of the employer's interest. *Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 566 P.2d 859 (1976). In that case, the Court stated the following:

"'While an employer may make almost any kind of a rule for the conduct of his employees and under some circumstances may be able to discharge an employee for violation of *any* rule, such does not, per se, amount to "misconduct" constituting a bar to unemployment compensation benefits.' *Supra* [566 P.2d] at 861.

"The Referee concludes that Claimant was not discharged for misconduct in connection with his employment.

"There is no evidence in the record that the few contacts which were made by the collection agent and other individuals with the employer representatives were detrimental to the operation of the employer. In fact, the record establishes that most of the communication between Claimant's employer and creditors in the collection agency was voluntarily initiated by the employer.

"Rule 7–18 of the employer states as follows:

"'Cause—Basically a "cause" for disciplinary adverse action is a recognizable offense against the employer-employee relationship. Cause for adverse action run the entire gamut of offenses against the employer-employee relationship, including inadequate performance of duties and improper conduct on or off the job. It is up to the State to decide between these two extremes what constitutes a proper or valid cause.'

"The burden of proof is on an employer to establish misconduct. *Parker v. St. Maries Plywood and Department of Employment,* 27 ICR 713, [101 Idaho 415] 614 P.2d 955 (1980). The record at hand fails to establish anything related to Claimant's job performance as a warehouseman which violates the employer's interest, violates a rule relating to job performance, disregards standards of behavior which the employer has a right to expect of his employee, or a substantial disregard of the Claimant's duties and obligations to the employer. Therefore, the Decision of the Appeals Examiner should be reversed." R., pp. 31–32.

The Commission disagreed with the result reached, and ruled that claimant was guilty of "misconduct in connection with his employment, *as defined by the Idaho Supreme Court.*" (Emphasis added.) The final order, which was signed by two members only,[1] was predicated on the declaration

---

1. Unless I have overlooked one, it seems to be the practice of the Industrial Commission to not record a dissenting vote or opinion—which

is unlike the Public Utilities Commission. Perhaps it would be helpful to know whether a commissioner did not participate or whether he

that "[t]he number of bad checks ... is sufficient to show willful misconduct," and nothing more.

Such *is not* sufficient, however. What it comes down to is a standoff between two members of the Commission on the one hand and its learned-in-the-law referee, on the other, as to an application of this Court's case law interpreting the statutory law. Such is the sole question, one which this Court alone can answer. Beyond dispute the referee was correct, and the two Commission members were wrong. The only harm done (until now) is the long delay Comegys has endured waiting for the benefits for which he most likely had more need for two and one-half years ago at the time of his discharge. However, the Court says, "Not yet, Mr. Comegys." It is said that Comegys must litigate just a little longer in order that the Commission be given the opportunity to make findings of fact. I see no reason for such totally unwarranted delay. For certain I question the supposed need for new findings of fact. Why? Simply because the Department concedes that the findings of the referee were left intact by the Commission, which is not only obvious from the state of the record, but supported by the two following colloquies between Court and counsel for the Department at presentation of oral argument:

"JUSTICE HUNTLEY: Counsel, following that critical point up, don't the rules require that there be findings of fact and conclusions of law and if, therefore, if the Commission doesn't want to accept the referee's findings they are duty bound to make their own findings and in this case they failed to do so.

"MR. MARTINDALE: Are you asking me?

"JUSTICE HUNTLEY: Yes, sir.

"MR. MARTINDALE: It's my impression that what they did was simply disagree with the result. If you read the language they say we disagree with the result. I think they've basically based

their conclusion on the findings of fact that have already been made by the referee and reached a different legal conclusion.

"JUSTICE BISTLINE: That's my interpretation and one I'm willing to live with if you are.

"MR. MARTINDALE: Oh, yes. They know that they need the findings of fact and I'm sure that they simply were relying on the findings already made by the referee.

"JUSTICE BISTLINE: But they changed the ultimate conclusion?

"MR. MARTINDALE: Yes.

. . . .

"JUSTICE HUNTLEY: ... On page 30 the referee makes a finding and I quote: 'There is no testimony in the record as to whether or not the contacts by the collection agent or other individuals was detrimental to the operation of the employer.' Now if in fact the Industrial Commission members did not change her findings and all they did was change their conclusions, aren't we as a reviewing board here bound by her findings and we're in a position equally with the two commissioners to draw conclusions of law?

"MR. MARTINDALE: Yes, I would agree that her findings of fact are those that you should base your decision upon.

"JUSTICE SHEPARD: Mr. Martindale, before you give that point away too quickly, let me ask you this.

"JUSTICE BISTLINE: He already has.

"JUSTICE SHEPARD: He hasn't as far as I'm concerned Justice Bistline.

"JUSTICE BAKES: Or me."

Where counsel with commendable candor specifically concedes a point, as was indisputably done here, notwithstanding coaching that they not do so, it will be extremely worrisome to trial lawyers that a majority of the Court rather divinely insists that it has not been done.

Counsel for the employer did not disagree with the Department's concession and for

dissented, and have the benefit of that knowledge and the reasons for disagreeing with the

other two members.

the most part limited its argument to espousing a personal view that an employee's issuance of insufficient funds checks is detrimental to the high image the Air National Guard believes that it has and which it wants to retain. Such, of course, was not a matter of record. The record, as first found by the referee, and then noted by Justice Huntley, is devoid of any such evidence. There is no excuse for not reversing and remanding with instructions to enter an award for Mr. Comegys.

There is no excuse for insisting that findings be made by the Commission, and less excuse for intimating (without directing) that the Commission reopen the case for additional testimony.

A proper appellate disposition here would have been to recite, as I have, the clear concise application of the law made by the referee, and our simple holding that the referee's ultimate conclusion was correct as a matter of law and should be reinstated.